[No. B160257. Second Dist., Div. Five. May 23, 2003.]

MICHAEL J. McMANUS, Plaintiff and Respondent, v.
CIBC WORLD MARKETS CORP., et al., Defendants and Appellants.

**COUNSEL**

O'Melveny & Myers, Michael G. McGuinness and Adam J. Karr for Defendants and Appellants.

Horowitz & Clayton, Craig A. Horowitz and Wayne D. Clayton for Plaintiff and Respondent.

**OPINION**

**TURNER, P. J.—**

### I. INTRODUCTION

Defendants, CIBC World Markets Corp. (CIBC) and Daniel Miller, appeal from an order denying a petition to compel arbitration of employment and defamation claims brought by plaintiff, Michael J. McManus. On appeal, we conclude that: the order denying the petition to compel arbitration must be reversed; the dispute between the parties must be arbitrated; but that plaintiff may not be required to pay certain costs of the arbitration.

### II. BACKGROUND

CIBC is a national investment bank and broker-dealer of securities. CIBC is a member of the National Association of Securities Dealers, Inc. (NASD), and the New York Stock Exchange (NYSE). The NASD and the NYSE are self-regulatory organizations that exercise a primary supervisory role over the securities market and its participants, subject to oversight by the Securities and Exchange Commission (SEC). Upon being hired by CIBC as a director of its consumer growth division, plaintiff signed two arbitration agreements. The first arbitration agreement was contained in an offer letter agreement dated January 26, 2001, and it provides: "All disputes arising out of your employment or the termination of your employment at CIBC World Markets, including any statutory claims based upon discrimination, will be submitted to and resolved exclusively by a panel of arbitrators from the NASD Dispute Resolution, Inc. or the New York Stock Exchange, Inc. All discovery in any such dispute will be in accordance with California State

court procedures. All such disputes will be governed by California law. In agreeing to arbitration of your claims, you recognize that you are giving up your right to a court or jury trial." The second arbitration agreement was in the SEC-approved Uniform Application for Securities Industry Registration or Transfer (form U-4). All applicants must sign the form U-4 agreement to arbitrate as a condition of employment in order to register with NASD and NYSE. Page 4, paragraph 5 of form U-4 provides: "I agree to arbitrate any dispute, claim or controversy that may arise between me and my firm, or a customer, or any other person, that is required to be arbitrated under the rules, constitutions, or by-laws of the *SROs* indicated in Item 11 as may be amended from time to time and that any arbitration award rendered against me may be entered as a judgment in any court of competent *jurisdiction*." (Original italics.)

On January 18, 2002, plaintiff filed a complaint in superior court against CIBC in which he asserted five causes of action: violation of Labor Code section 201 et seq., for failure to pay wages (first); promissory estoppel (second); wrongful termination in violation of public policy (third); defamation (fourth); and violation of Labor Code sections 432 and 1198.5 involving the alleged failure to provide the opportunity to inspect and permit copying of personnel documents (fifth). Plaintiff asserted the defamation claim against Mr. Miller, who was a financial analyst at CIBC. The complaint alleged that plaintiff was terminated for off-duty conduct which arose after Mr. Miller arranged a beach party for CIBC employees. Plaintiff became intoxicated at the party. As a result, Mr. Miller drove to plaintiff's home. The two men were accompanied by Mr. Miller's wife. Mr. Miller and plaintiff subsequently walked into a bar. Mr. Miller and plaintiff began to fight while in the bar. According to the complaint, the Millers falsely accused plaintiff of sexually harassing Mrs. Miller. Plaintiff alleged that this alleged off-duty conduct was used as a pretext for firing him to avoid paying him salary and bonuses as promised. Plaintiff also alleged that a false police report was "filed" against him regarding the incident with the Millers.

On February 27, 2002, CIBC filed a motion to compel arbitration of the dispute based on the two aforementioned agreements. Mr. Miller joined in the motion to compel arbitration. Plaintiff opposed the motion to compel arbitration on the ground the aforementioned agreements were unenforceable because they were substantively and procedurally unconscionable under California law. Plaintiff argued the arbitration agreements were procedurally unconscionable because they: were presented on a take or leave it basis; his declaration demonstrated, as a prerequisite of employment, he was required to sign the U-4 form and the offer letter; and he was told that he would not be hired unless he signed both documents.

On March 25, 2002, the trial court granted the motion to compel arbitration. On April 19, 2002, plaintiff filed a mandate petition with this court. (*McManus v. Superior Court* (Apr. 19, 2002, B157970).) CIBC and Mr. Miller did not file a response to the petition. On June 21, 2002, we issued an order to show cause . . . to the superior court which stated in part: "[Y]ou are ordered to show cause why the relief prayed for in the petition for writ of mandated filed April 19, 2002, should not be granted. (See *Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 174-177 [116 Cal.Rptr.2d 671]; cf. *Doctor's Associates, Inc. v. Casarotto* (1996) 517 U.S. 681, 687, fn. 3 [116 S.Ct. 1652, 1656, 134 L.Ed.2d 902]; *Perry v. Thomas* (1987) 482 U.S. 483, 492, fn. 9 [107 S.Ct. 2520, 2527, 96 L.Ed.2d 426]; U.S. Const., art. VI, cl. 2.)" We did not issue an alternative writ of mandate. On July 2, 2002, in response to the order to show cause, the trial court set aside and vacated its March 25, 2002, order granting the motion to compel arbitration. The trial court then entered a new order denying the motion to compel arbitration. On July 9, 2002, we discharged the order to show cause and dismissed the petition for writ of mandate as moot. Thereafter, defendants filed a timely notice of appeal from the order denying the motion to compel arbitration.

### III. DISCUSSION

#### A. *Introduction*

Defendants contend the United States Arbitration Act mandates this dispute be arbitrated. ■ The employment contract is between an investment bank and a director of consumer growth, which involves commerce, and, as such is subject to the limited preemptive effect of the United States Arbitration Act. (9 U.S.C. §§ 1, 2; *Circuit City Stores, Inc. v. Adams* (2001) 532 U.S. 105, 111-118 [121 S.Ct. 1302, 1306-1311, 149 L.Ed.2d 234]; *Allied-Bruce Terminix Companies, Inc. v. Dobson* (1995) 513 U.S. 265, 277 [115 S.Ct. 834, 841, 130 L.Ed.2d 753]; *Perry v. Thomas, supra,* 482 U.S. at p. 490 [107 S.Ct. at pp. 2525-2526].) ■ There is a public policy in favor of arbitration under federal and state law. (*Moses H. Cone Hospital v. Mercury Const. Corp.* (1983) 460 U.S. 1, 24 [103 S.Ct. 927, 941, 74 L.Ed.2d 765]; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 [99 Cal.Rptr.2d 745, 6 P.3d 669] ["California law, like federal law, favors enforcement of valid arbitration agreements"] (*Armendariz.*)

■ The United States Arbitration Act provides in relevant part, "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing

controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2; see *EEOC v. Waffle House, Inc.* (2002) 534 U.S. 279, 289 [122 S.Ct. 754, 761-762, 151 L.Ed.2d 755].) Thus, an arbitration contract must be enforced according to its terms but is nevertheless subject to state law defenses applicable to all contract disputes under general contract law principles, such as fraud, duress, or unconscionability. (*Doctor's Associates, Inc. v. Casarotto, supra*, 517 U.S. at p. 687 [116 S.Ct. at p. 1656]; *Allied-Bruce Terminix Companies, Inc. v. Dobson, supra*, 513 U.S. at p. 281 [115 S.Ct. at p. 843].) A state court may not invalidate arbitration agreements under state laws that are only applicable to arbitration provisions. (*Doctor's Associates, Inc. v. Casarotto, supra*, 517 U.S. at p. 687 [116 S.Ct. at p. 1656]; *Allied-Bruce Terminix Companies, Inc. v. Dobson, supra*, 513 U.S. at p. 281 [115 S.Ct. at p. 843].) A legislative enactment that is unique to an arbitration agreement which invalidates a duty to arbitrate a dispute is invalid under the supremacy clause because this might allow state courts to avoid the preemptive effect of the United States Arbitration Act. (*Perry v. Thomas, supra*, 482 U.S. at p. 492 [107 S.Ct. at pp. 2526-2527]; *Southland Corp. v. Keating* (1984) 465 U.S. 1, 16 [104 S.Ct. 852, 861, 79 L.Ed.2d 1].) Not only are state legislatures barred from enacting laws that single out arbitration clauses, but courts may not, in assessing the rights of litigants, judicially construe an agreement to arbitrate differently from nonarbitration agreements. (*Doctor's Associates, Inc. v. Casarotto, supra*, 517 U.S. at p. 687, fn. 3 [107 S.Ct. at pp. 2526-2527]; *Perry v. Thomas, supra*, 482 U.S. at p. 492, fn. 9 [107 S.Ct. at p. 2527].) The question of whether a valid agreement to arbitrate exists is determined by reference to state law applicable to contracts generally. (*Perry v. Thomas, supra*, 482 U.S. at p. 492 [107 S.Ct. at pp. 2526-2527]; *Chan v. Drexel Burnham Lambert, Inc.* (1986) 178 Cal.App.3d 632, 638-639 [223 Cal.Rptr. 838].) ■ If the extrinsic evidence is undisputed, an appellate court reviews an arbitration contract de novo to determine whether it is legally enforceable. (*Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 174; *Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 851 [113 Cal.Rptr.2d 376].)

B. *The Unconscionability Issue*

Plaintiff argues the motion to compel arbitration was properly denied because the two arbitration clauses were unenforceable on the ground they were unconscionable. (Civ. Code, § 1670.5; Code Civ. Proc., §§ 1281,

1281.2[1].) Civil Code section 1670.5 sets forth standards for unconscionability as follows: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result."

Courts analyze the unconscionability standard in Civil Code section 1670.5 as invoking elements of procedural and substantive unconscionability. (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329 [83 Cal.Rptr.2d 348]; *Stirlen v. Supercuts, Inc.* (1997) 51 Cal.App.4th 1519, 1530 [60 Cal.Rptr.2d 138].) The procedural element of unconscionability focuses on whether the contract is one of adhesion. (*Armendariz, supra,* 24 Cal.4th at p. 113; *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at p. 174.) Procedural unconscionability focuses on whether there is "oppression" arising from an inequality of bargaining power or "surprise" arising from buried terms in a complex printed form. (*Armendariz, supra,* 24 Cal.4th at p. 114; *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at p. 174.) The substantive element addresses the existence of overly harsh or one-sided terms. (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 [130 Cal.Rptr.2d 892, 63 P.3d 979]; *Armendariz, supra,* 24 Cal.4th at p. 114.) An agreement to arbitrate is unenforceable only if *both* the procedural and substantive elements are satisfied. (*Armendariz, supra,* 24 Cal.4th at p. 113; *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at p. 174.) However, *Armendariz* held, "[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz,* at p. 114; see also *Kinney v. United HealthCare Services, Inc., supra,* 70 Cal.App.4th at p. 1329.)

### 1. *Preemption*

Defendants argue the California definition of unconscionability and the requirements of *Armendariz* are preempted to the extent that they conflict

---

[1]Code of Civil Procedure section 1281 states, "A written agreement to submit to arbitration an existing controversy or a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Code of Civil Procedure section 1281.2 states in pertinent part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement. . . ."

with the federal system of arbitration created by the SEC's adoption of form U-4 and its signature requirements and the commission's approval of the NASD and NYSE arbitration rules. Pursuant to its regulatory authority, the SEC has approved the arbitration procedures of NASD and NYSE, which are at issue in this case. (*Shearson/American Express, Inc. v. McMahon* (1987) 482 U.S. 220, 234 [107 S.Ct. 2332, 2341-2342, 96 L.Ed.2d 185]; see *Nicholson v. CPC Intern. Inc.* (3d Cir. 1989) 877 F.2d 221, 240.) The SEC has also approved amendments to the NASD and NYSE arbitration procedures that exempt employment discrimination claims. (NASD Code of Arbitration Procedure rule 10201; NYSE rule 600.)[2] Under federal and state law, plaintiff was required to sign the form U-4, to-register with the NASD or NYSE, and to be bound by the SEC's arbitration procedures. (17 C.F.R. § 240.15b7-1 (2002); Cal. Code of Regs., tit. 10, § 260.210.)[3]

---

[2] NASD Code of Arbitration Procedure rule 10201 states in pertinent part: "(a) Except as provided in paragraph (b) . . . , a dispute, claim, or controversy eligible for submission . . . arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated under this Code . . . . [¶] . . . [¶] (b) A claim alleging employment discrimination, including a sexual harassment claim, in violation of a statute is not required to be arbitrated. Such a claim may be arbitrated only if the parties have agreed to arbitrate it, either before or after the dispute arose." NYSE rule 600 states in part: "(a) Any dispute . . . shall be arbitrated under the Constitution and Rules of the New York Stock Exchange, Inc. . . . [¶] (f) Any claim alleging employment discrimination, including any sexual harassment claims, in violation of a statute shall be eligible for submission to arbitration under these Rules only where the parties have agreed to arbitrate the claim after it has arisen."

[3] Title 17 Code of Federal Regulations part 240.15b7-1 (2002) states in relevant part: "No registered broker or dealer shall effect any transaction in, or induce the purchase or sale of, any security unless any natural person associated with such broker or dealer who effects or is involved in effecting such transaction is registered or approved in accordance with the standards of training, experience, competence, and other qualification standards (including but not limited to submitting and maintaining all required forms . . .) established by the rules of any national securities exchange or national securities association . . . ." California Code of Regulations, title 10, section 260.210 states in part: "The procedures set forth in this section are applicable to broker-dealers licensed pursuant to subdivisions (a) and (b) of Section 25211 of the Code. [¶] (a) Upon employment of an individual as an agent, a broker-dealer shall (1) obtain a properly executed application for registration, on the Uniform Application for Securities Industry Registration and Transfer Form (Revised 11/97) ('Form U-4') . . . . [¶] (b) A broker-dealer who registers its agents with the National Association of Securities Dealers Regulation, Inc. (the 'NASDR'), shall: [¶] (1) Upon the employment of an individual as an agent, file the Form U-4, through the Central Registration Depository (the 'CRD') of the NASDR in accordance with its procedures . . . . The filing of Form U-4 with the CRD does not constitute an automatic 'approval' through the CRD. Broker-dealers should not consider an agent 'registration' through the CRD approved until approved by the Commissioner and the approval has been received through the CRD. If requested by the Commissioner, additional information, documentation or details pertaining to the Form U-4 or properly executed fingerprint cards of the agent must be filed directly with the Commissioner within 15 days from the date of the request. In accordance with Section 250.16, the Form U-4 may be abandoned if the Commissioner does not receive the requested information within the time prescribed. The Commissioner shall 'reject' through the CRD an abandoned

There is a division of authority concerning the application of state law unconscionability principles as they relate to broker employment agreements which require mandatory arbitration under procedures that have been approved by the SEC. There is authority that state law unconscionability principles may be considered in determining whether execution of the form U-4 renders the agreement unenforceable. (See *Koveleskie v. SBC Capital Markets, Inc.* (7th Cir. 1999) 167 F.3d 361, 366-367 [concluding that execution of form U-4 as a condition of employment was not an unconscionable contract of adhesion but considered the issue under Illinois law]; *Hope v. Superior Court* (1981) 122 Cal.App.3d 147, 149 [175 Cal.Rptr. 851] [stock broker agreement requiring mandatory arbitration was contract of adhesion]; see also *Baker v. Aubry* (1989) 216 Cal.App.3d 1259, 1263-1264 [265 Cal.Rptr. 381] [question of the existence of valid agreement to scope and construction of arbitration clause determined by federal law but existence of valid agreement to arbitrate under form U-4 determined under state law]; see also *Duffield v. Robertson Stephens & Co.* (9th Cir. 1998) 144 F.3d 1182, 1199 [concluding arbitration clause was invalid because form U-4 presented on take-it-or-leave-it basis].)

By contrast, a number of decisions give substantial deference to the fact that the SEC has approved of mandatory arbitration procedures and conclude that agreements are not unconscionable without reference to state law principles. (See *Seus v. John Nuveen & Co., Inc.* (3d Cir. 1998) 146 F.3d 175, 177-178 [concluding terms of form U-4 are not so one-sided as to be oppressive]; *Cohen v. Wedbush, Noble, Cooke, Inc.* (9th Cir. 1988) 841 F.2d 282, 286, overruled on related ground in *Ticknor v. Choice Hotels Intern., Inc.* (9th Cir. 2001) 265 F.3d 931, 941-942 [federal public policy favoring arbitration coupled with the extensive regulatory oversight performed by the SEC in this area, compel the conclusion that agreements to arbitrate are not unconscionable as a matter of law]; *Heily v. Superior Court* (1988) 202 Cal.App.3d 255, 262 [248 Cal.Rptr. 673] [former stockbroker employee could not assert state law contract unconscionability principles to oppose mandatory arbitration of claims under NYSE which were not unconscionable under the United States Arbitration Act]; *Tonetti v. Shirley* (1985) 173 Cal.App.3d 1144, 1151 [219 Cal.Rptr. 616] [California adhesion contract principles are inapplicable to enforcement of arbitration provision]; see also *Stirlen v. Supercuts, Inc., supra,* 51 Cal.App.4th at p. 1550 [noting that California courts are unwilling to impose different criteria of unconscionability issue in securities industries cases because it has been "so heavily litigated in federal courts"].)

---

Form U-4. [¶] . . . [¶] (3) File an amendment to the Form U-4 through the CRD within 30 days when there are any changes to the information contained in the original Form U-4. If the Form U-4 is being amended due to a disciplinary occurrence, a copy of the amendment shall be filed with the Commissioner upon request."

Most of the cases which have concluded the form U-4 was not unconscionable as a matter of law have relied on *Gilmer v. Interstate/Johnson Lane Corp.* (1991) 500 U.S. 20, 23-33 [111 S.Ct. 1647, 1650-1651, 114 L.Ed.2d 26]. In *Gilmer*, the plaintiff, a securities employee, was required to register with the NYSE as a condition of employment. His registration application contained the form U-4 application mandating arbitration of disputes. (*Id.* at p. 23 [111 S.Ct. at pp. 1650-1651].) *Gilmer* addressed the employee's contention the arbitration agreement was unenforceable because of unequal bargaining power between employers and employees. (*Id.* at pp. 32-33 [111 S.Ct. at pp. 1655-1656].) *Gilmer* stated: "Mere inequality in bargaining power, however, is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context. Relationships between securities dealers and investors, for example, may involve unequal bargaining power, but we nevertheless held in *Rodriguez de Quijas* [*v. Shearson/ American Exp., Inc.* (1989) 490 U.S. 477, 484 [109 S.Ct. 1917, 1921-1922, 104 L.Ed.2d 526]] and *Shearson/American Express, Inc.* [*v. McMahon, supra,* 482 U.S. at p. 230 [107 S.Ct. at pp. 2339-2340]] that agreements to arbitrate in that context are enforceable. . . . [T]he FAA's purpose was to place arbitration agreements on the same footing as other contracts. Thus, arbitration agreements are enforceable, 'save upon such grounds as exist at law or in equity for the revocations of any contract.' 9 U.S.C. § 2. 'Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for revocation of any contract." ' [Citation.] There is no indication in this case, however, that [the employee], an experienced businessman, was coerced or defrauded into agreeing to the arbitration clause in his registration application. As with the claimed procedural inadequacies discussed above, *this claim of unequal bargaining power is best left for resolution in specific cases.*" (*Id.* at p. 33 [111 S.Ct. at pp. 1655-1656], italics added.)

Thus, rather than concluding that the form U-4 was not unconscionable as a matter of law, *Gilmer* stated that the issue was best left for resolution in specific cases. (See *Lagatree v. Luce, Forward, Hamilton & Scripps* (1999) 74 Cal.App.4th 1105, 1121-1127 [88 Cal.Rptr.2d 664] [reviewing cases since *Gilmer* and stating that execution of the form U-4 as a condition of employment is not invalid per se but noting that an unconscionability claim is best left for resolution in specific cases].) This case-by-case approach is consistent with authorities holding state law adhesion contract principles may be relied upon to invalidate arbitration agreements without violating the United States Arbitration Act if they are applied to contracts in general. (9 U.S.C. § 2; *Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656]; *Allied-Bruce Terminix Companies, Inc. v. Dobson,*

*supra*, 513 U.S. at p. 281 [115 S.Ct. at p. 843]; *Volt Info. Sciences v. Leland Stanford Jr. U.* (1989) 489 U.S. 468, 477-478 [109 S.Ct. 1248, 1254-1255, 103 L.Ed.2d 488]; *Perry v. Thomas, supra*, 482 U.S. at p. 492 [107 S.Ct. at pp. 2526-2527]; see also *Ticknor v. Choice Hotels Intern., Inc., supra*, 265 F.3d at pp. 941-942; *Armendariz, supra*, 24 Cal.4th at p. 113.) ■ There is no preemption by the United States Arbitration Act unless the state legislation or judicial decisional authority is aimed at arbitration agreements. (*Doctor's Associates, Inc. v. Casarotto, supra*, 517 U.S. at p. 687 [116 S.Ct. at p. 1656]; *Ticknor v. Choice Hotels Intern., Inc., supra*, 265 F.3d at pp. 941-942 ["In all situations where arbitration provisions are 'placed upon the same footing as other contracts' . . . , state law applies"].)

## 2. *Procedural Unconscionability*

■ Application of the above stated principles shows that the arbitration clauses are procedurally unconscionable in that they are adhesive. The evidence established that as a condition of employment, plaintiff was required to sign the form U-4 to be registered to sell or trade securities. Under federal and state law, plaintiff was required to register with the NASD and NYSE. As a result, plaintiff was subject to the NASD and NYSE arbitration procedures. (17 C.F.R. § 240.15b7-1 (2002); Cal. Code of Regs., tit. 10, § 260.210; see fn. 3 *ante*.) Plaintiff was advised he would not be hired if he did not sign the form. The Court of Appeal has held, "When the weaker party is presented the clause and told to 'take it or leave it' without the opportunity for meaningful negotiation, oppression, and therefore procedural unconscionability, are present." (*Szetela v. Discover Bank* (2002) 97 Cal.App.4th 1094, 1100 [118 Cal.Rptr.2d 862]; *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 174; see also *Ferguson v. Countrywide Credit Industries, Inc.* (9th Cir. 2002) 298 F.3d 778, 784.) Because the employee was bound by the offer letter and the form U-4 as a condition of employment, the arbitration agreements are adhesive. (*Armendariz, supra*, 24 Cal.4th at p. 114; *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 174.) The fact that the arbitration clauses are adhesive does not as a matter of law render them unenforceable. Rather, as noted above, a sliding scale is invoked whereby the more procedurally oppressive the arbitration clause is, the less evidence of substantive unconscionability is required to warrant the conclusion that the agreements to arbitrate are unenforceable. (*Armendariz, supra*, 24 Cal.4th at pp. 114-115; *Mercuro v. Superior Court, supra*, 96 Cal.App.4th at p. 174.)

■ Defendants argue that because plaintiff was required by the two aforementioned regulations to sign the forms requiring he arbitrate his

claims, no procedural unconscionability finding can be utilized to bar enforcement under the provisions of United States Arbitration Act. Here is the problem with that contention. As noted previously, United States Code, title 9 section 2, requires an arbitration agreement be enforced subject to state law defenses, including unconscionability, applicable to all contracts. (*Doctor's Associates, Inc. v. Casarotto, supra,* 517 U.S. at p. 687 [116 S.Ct. at p. 1656]; *Allied-Bruce Terminix Companies, Inc. v. Dobson, supra,* 513 U.S. at p. 281 [115 S.Ct. at p. 843].) Civil Code section 1670.5, which has been construed to permit a finding of procedural unconscionability when a contract is offered on a take it or leave it basis by a party with greater bargaining power, applies to *all* contractual clauses including agreements to arbitrate. (*Armendariz, supra,* 24 Cal.4th at p. 113; *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1086 [123 Cal.Rptr.2d 288]; *Kinney v. United HealthCare Services, Inc., supra,* 70 Cal.App.4th at p. 1328; *Stirlen v. Supercuts, supra,* 51 Cal.App.4th at p. 1531; *Westlye v. Look Sports, Inc.* (1993) 17 Cal.App.4th 1715, 1739 [22 Cal.Rptr.2d 781]; *Carboni v. Arrospide* (1991) 2 Cal.App.4th 76, 81-82 & fn. 5 [2 Cal.Rptr.2d 845]; *Appalachian Ins. Co. v. McDonnell Douglas Corp.* (1989) 214 Cal.App.3d 1, 22 [262 Cal.Rptr. 716]; *H. S. Perlin Co. v. Morse Signal Devices* (1989) 209 Cal.App.3d 1289, 1300-1301 [258 Cal.Rptr. 1].) Hence, the preemptive effect of the United States Arbitration Act found in 9 United States Code section 2, is limited by California's contractual unconscionability law which applies to all contracts and contractual clauses. The fact that an employee in the securities industry is required to enter into an agreement on a take-it-or-leave-it basis with no opportunity for negotiation on the issue of arbitration does not alter the scope of the preemptive effect of 9 United States Code section 2, as limited by California's contractual unconscionability law. In fact, as noted previously, 9 United States Code section 2 expressly recognizes that a duty to arbitrate can be vitiated by a state's contractual unconscionability law when it applies to all contracts. As will be noted, in this case, California's contractual unconscionability law does not bar the enforcement of the present arbitration clauses or otherwise frustrate the limited preemptive effect of 9 United States Code section 2.

3. *Substantive Unconscionability*

a) *plaintiff's contentions*

Plaintiff argues that the agreements are substantively unconscionable because: (1) there is an unlawful fee allocation scheme; (2) there is no neutral selection of arbitrators but mandatory NASD or NYSE arbitration; (3) with the exception of statutory discrimination claims for which NASD modified its rules, there is no requirement that the arbitrator be a lawyer or

judge; (4) there are no discovery rights; (5) the arbitrators are not required to state reasons for the award; and (6) there is no mutual obligation to arbitrate. We address each of these arguments in the order in which they are presented.

b) *the costs of arbitration*

■ It is unlawful to require an employee who is bound by a mandatory employment arbitration agreement to pay the costs of arbitration. (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pp. 1080-1081; *Armendariz, supra,* 24 Cal. 4th at pp. 109-110.) In *Armendariz,* the California Supreme Court stated, "[W]hen an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if her or she were free to bring the action in court." (*Armendariz, supra,* 24 Cal.4th at pp. 110-111, original italics; see *Fittante v. Palm Springs Motors, Inc.* (2003) 105 Cal.App.4th 708, 718 [129 Cal.Rptr.2d 659].) With regard to the arbitration of statutory claims, *Armendariz* concluded that it is an insufficient judicial response to hold that the fees may ultimately be cancelled because such a system poses a significant risk of chilling the exercise of statutory rights. (*Armendariz, supra,* 24 Cal.4th at p. 111; see *Fittante v. Palm Springs Motors, Inc., supra,* 105 Cal.App.4th at p. 719.)

In this case, plaintiff may be obligated to pay a deposit of $500 plus $1,200 per anticipated hearing session. This is beyond any expense that an employee would be required to bear if the action was brought in court. Because the fee provision created a risk that the employee would be required to pay unreasonable costs at the time the employer imposed mandatory arbitration clauses as a condition of employment, it was unenforceable. (Civ. Code, § 1670.5; *Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pp. 1080-1081; *Armendariz, supra,* 24 Cal. 4th at pp. 109-110.)

c) *the selection of arbitrators*

■ Plaintiff contends the arbitration clauses are substantively unconscionable because of the mandatory arbitrator selection process. Plaintiff reasons that a process whereby a claimant has no right to consent to an arbitrator is substantively unconscionable. Relying on *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at pages 178-179, plaintiff argues the selection process suffers from the "repeat player effect" in that the employer repeatedly appears before the same group of arbitrators. *Mercuro* concluded that the process at issue conveyed "distinct advantages over the individual employee." (*Mercuro v. Superior Court, supra,* 96 Cal.App.4th at p. 178.)

Although under the circumstances in *Mercuro* the agreement was unconscionable, our Division Seven colleagues concluded that the "repeat player effect" was insufficient in itself to render an arbitration agreement unconscionable. (*Id.* at p. 179; accord, *Armendariz, supra,* 24 Cal.4th p. 92.) One of the circumstances found to be unconscionable in *Mercuro* was that under procedures by the National Arbitration Forum, eight such arbitrators were eligible to serve as arbitrators within the applicable rules. (*Mercuro v. Superior Court, supra,* 96 Cal.App.4th at p. 178.) In addition, the arbitrator was selected by the National Arbitration Forum and the employee was not permitted to participate in the selection process. (*Id.,* at p. 179.)

Plaintiff has presented no evidence that the NASD or NYSE arbitration procedures would entail a "repeat player effect." Moreover, in this case, employees are allowed to participate in the selection process. (NASD Code of Arbitration Procedure, rule 10308(b); NYSE rule 608.[4]) The rules provide that the arbitrators must disclose circumstances that might preclude an

[4]NASD Code of Arbitration Procedure, rule 10308 provides in part: "(b) . . . [¶] . . . [¶] (4) Preparation of Lists [¶] (A) Except as provided in subparagraph (B) below, the Neutral List Selection System shall generate the lists of public and non-public arbitrators on a rotating basis within a designated geographic hearing site and shall exclude arbitrators based upon conflicts of interest identified within the Neutral List Selection System database. [¶] (B) If a party requests that the lists include arbitrators with expertise classified in the Neutral List Selection System, the lists may include some arbitrators having the designated expertise. [¶] (5) Sending of Lists to Parties [¶] The Director shall send the lists of arbitrators to all parties at the same time approximately 30 days after the last answer is due. [¶] (6) Information About Arbitrators [¶] The Director shall send to the parties employment history for each listed arbitrator for the past 10 years and other background information. If a party requests additional information about an arbitrator, the Director shall send such request to the arbitrator, and shall send the arbitrator's response to all parties at the same time. . . . [¶] (c) Striking, Ranking, and Appointing Arbitrators on Lists [¶] (1) Striking and Ranking Arbitrators [¶] (A) Striking An Arbitrator [¶] A party may strike one or more of the arbitrators from each list for any reason. [¶] (B) Ranking-Panel of One Arbitrator [¶] Each party shall rank all of the arbitrators remaining on the list by assigning each arbitrator a different, sequential, numerical ranking, with a '1' rank indicating the party's first choice, a '2' indicating the party's second choice, and so on. [¶] (C) Ranking-Panel of Three Arbitrators [¶] Each party shall rank all of the public arbitrators remaining on the list by assigning each arbitrator a different, sequential, numerical ranking, with a '1' rank indicating the party's first choice, a '2' indicating the party's second choice, and so on. Each party separately shall rank all of the non-public arbitrators remaining on the list, using the same procedure. [¶] . . . [¶] (3) Process of Consolidating Parties' Rankings [¶] The Director shall prepare one or two consolidated lists of arbitrators, as appropriate under paragraph (b)(2) or (b)(3), based upon the parties' numerical rankings. The arbitrators shall be ranked by adding the rankings of all claimants together and all respondents together, including third-party respondents, to produce separate consolidated rankings of the claimants and the respondents. The Director shall then rank the arbitrators by adding the consolidated rankings of the claimants, the respondents, including third-party respondents, and any other party together, to produce a single consolidated ranking number, excluding arbitrators who were stricken by any party. [¶] (4) Appointment of Arbitrators [¶] (A) Appointment of Listed Arbitrators [¶] The Director shall appoint arbitrators to serve on the arbitration panel based on the order of rankings on the consolidated list or

objective and impartial determination including financial and personal interests in the outcome. (NASD Code of Arbitration Procedure, rule 10312; NYSE rule 610[5].) The employment histories of the arbitrators are made available to the parties. (NASD Code of Arbitration Procedure, rule 10308; NYSE rule 608; see fn. 5, *ante*.) Each party is given one peremptory challenge and an unlimited number of challenges for cause. (NASD Code of Arbitration Procedure, rule 10311(a); NYSE rule 609.[6]) In addition, the agreement provides that the arbitrator and the arbitration provider are subject

lists, subject to availability and disqualification. [¶] (B) Discretion to Appoint Arbitrators Not on List [¶] If the number of arbitrators available to serve from the consolidated list is not sufficient to fill a panel, the Director shall appoint one or more arbitrators to complete the arbitration panel." NYSE rule 608 provides in part, "The Director of Arbitration shall inform the parties of the names and employment histories of the arbitrators for the past ten (10) years, as well as information disclosed pursuant to Rule 610, at least fifteen (15) business days prior to the date fixed for the initial hearing session. A party may make further inquiry of the Director of Arbitration concerning an arbitrator's background."

[5]NASD Code of Arbitration Procedure, rules 10312(a) and (b) provide in part: "Each arbitrator shall be required to disclose to the Director of Arbitration any circumstances which might preclude such arbitrator from rendering an objective and impartial determination. Each arbitrator shall disclose: [¶] (1) Any direct or indirect financial or personal interest in the outcome of the arbitration; [¶] (2) Any existing or past financial, business, professional, family, social, or other relationships or circumstances that are likely to affect impartiality or might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships or circumstances that they have with any party or its counsel, or with any individual whom they have been told will be a witness. They should also disclose any such relationship or circumstances involving members of their families or their current employers, partners, or business associates. [¶] (b) Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests, relationships, or circumstances described in paragraph (a) above. [¶] (c) The obligation to disclose interests, relationships, or circumstances that might preclude an arbitrator from rendering an objective and impartial determination described in paragraph (a) is a continuing duty that requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests, relationships, or circumstances that arise, or are recalled or discovered." NYSE rule 610 states in part: "(a) Each arbitrator shall be required to disclose to the Director of Arbitration any circumstances which might preclude such arbitrator from rendering an objective and impartial determination. Each arbitrator shall disclose: (1) Any direct or indirect financial or personal interest in the outcome of the arbitration; [¶] (2) Any existing or past financial, business, professional, family or social relationships that are likely to affect impartiality or might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships which they personally have with any party or its counsel, or with any individual whom they have been told will be a witness. They should also disclose any such relationship involving members of their families or their current employers, partners or business associates."

[6]NASD Code of Arbitration Procedure, rule 10311(a) states: "In an arbitration proceeding, except as provided in Rule 10335, each party shall have the right to one peremptory challenge. In arbitrations where there are multiple Claimants, Respondents, and/or Third-Party Respondents, the Claimants shall have one peremptory challenge, the Respondents shall have one peremptory challenge, and the Third-Party Respondents shall have one peremptory challenge. The Director may in the interests of justice award additional peremptory challenges to any party to an arbitration proceeding. Unless extended by the Director, a party wishing to

to standards 4 through 6 of California's Ethics Standards for Neutral Arbitrators in Contractual Arbitration. Further, the arbitrators are subject to disclosure duties pursuant to Code of Civil Procedure section 1281.9.[7] An

exercise a peremptory challenge must do so by notifying the Director in writing within 10 business days of notification of the identity of the person(s) named under Rule 10310 or Rule 10321(d) or (e), whichever comes first. There shall be unlimited challenges for cause." NYSE rule 609 states: "In any arbitration proceeding, each party shall have the right to one peremptory challenge. In arbitrations where there are multiple claimants, respondents and/or third party respondents, the claimants shall have one peremptory challenge, the respondents shall have one peremptory challenge and the third party respondents shall have one peremptory challenge, unless the Director of Arbitration determines that the interests of justice would be best served by awarding additional peremptory challenges. Unless extended by the Director of Arbitration, a party wishing to exercise a peremptory challenge must do so by notifying the Director of Arbitration in writing within ten (10) business days of notification of the identity of the person(s) named under Rule 619(d), (e) or Rule 608 whichever comes first. There shall be unlimited challenges for cause."

[7]Code of Civil Procedure section 1281.9 states: "(a) In any arbitration pursuant to an arbitration agreement, when a person is to serve as a neutral arbitrator, the proposed neutral arbitrator shall disclose all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial, including all of the following: [¶] (1) The existence of any ground specified in Section 170.1 for disqualification of a judge. For purposes of paragraph (8) of subdivision (a) of Section 170.1, the proposed neutral arbitrator shall disclose whether or not he or she has a current arrangement concerning prospective employment or other compensated service as a dispute resolution neutral or is participating in, or, within the last two years, has participated in, discussions regarding such prospective employment or service with a party to the proceeding. [¶] (2) Any matters required to be disclosed by the ethics standards for neutral arbitrators adopted by the Judicial Council pursuant to this chapter. [¶] (3) The names of the parties to all prior or pending noncollective bargaining cases in which the proposed neutral arbitrator served or is serving as a party arbitrator for any party to the arbitration proceeding or for a lawyer for a party and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party who is not a party to the pending arbitration as 'claimant' or 'respondent' if the party is an individual and not a business or corporate entity. [¶] (4) The names of the parties to all prior or pending noncollective bargaining cases involving any party to the arbitration or lawyer for a party for which the proposed neutral arbitrator served or is serving as neutral arbitrator, and the results of each case arbitrated to conclusion, including the date of the arbitration award, identification of the prevailing party, the names of the parties' attorneys and the amount of monetary damages awarded, if any. In order to preserve confidentiality, it shall be sufficient to give the name of any party not a party to the pending arbitration as "claimant" or "respondent" if the party is an individual and not a business or corporate entity. [¶] (5) Any attorney-client relationship the proposed neutral arbitrator has or had with any party or lawyer for a party to the arbitration proceeding. [¶] (6) Any professional or significant personal relationship the proposed neutral arbitrator or his or her spouse or minor child living in the household has or has had with any party to the arbitration proceeding or lawyer for a party. [¶] (b) Subject only to the disclosure requirements of law, the proposed neutral arbitrator shall disclose all matters required to be disclosed pursuant to this section to all parties in writing within 10 calendar days of service of notice of the proposed nomination or appointment. [¶] (c) For purposes of this section, 'lawyer for a party' includes any lawyer or law firm currently associated in the practice of law with the

award must be set aside if the arbitrator neglects to disclose a ground for disqualification as required by Code of Civil Procedure section 1281.9 or fails to recuse himself or herself upon receipt upon a recusal demand. (Code Civ. Proc., § 1286.2, subd. (a)(6).)[8] Plaintiff has not established that these comprehensive selection procedures render the agreement substantively unconscionable. (*Gilmer v. Interstate/Johnson Lane Corp., supra,* 500 U.S. at pp. 30-31 [111 S.Ct. at pp. 1654-1655]; *Parr v. Superior Court* (1983) 139 Cal.App.3d 440, 447 [188 Cal.Rptr. 801].)

 d) *the fact there is no requirement the arbitrator be a lawyer or a retired judge*

■ Plaintiff argues, with the exception of statutory discrimination claims for which NASD has modified its rules, there is no requirement that the arbitrator be a lawyer or judge. Without citation to any authority, plaintiff argues only a lawyer or retired judge can evaluate his statutory wage claims in the complaint. Judicial suspicions about the competency of arbitral tribunals may not inhibit enforcement of the arbitration provisions subject to the limited preemptive effect of the United States Arbitration Act. (*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.* (1985) 473 U.S. 614, 626-627 [105 S.Ct. 3346, 3353-3354, 87 L.Ed.2d 444]; *Shearson/American Exp., Inc. v. McMahon, supra,* 482 U.S. at p. 226 [107 S.Ct. at p. 2337].) It is firmly established that the arbitral forum can adequately protect an employee's statutory and other rights. (*Gilmer v. Interstate/Johnson Lane Corp., supra,* 500 U.S. at p. 28 [111 S.Ct. at p. 1653]; *Koveleskie v. SBC Capital Markets, Inc., supra,* 167 F.3d at p. 369; *Seus v. John Nuveen & Co., Inc., supra,* 146 F.3d at pp. 185-187.)

 e) *the discovery procedures*

■ Plaintiff's claim that he has no discovery rights lacks merit. There are extensive discovery procedures under NASD and NYSE providing for

---

lawyer hired to represent a party. [¶] (d) For purposes of this section, 'prior cases' means noncollective bargaining cases in which an arbitration award was rendered within five years prior to the date of the proposed nomination or appointment. [¶] (e) For purposes of this section, 'any arbitration' does not include an arbitration conducted pursuant to the terms of a public or private sector collective bargaining agreement."

 [8]Code of Civil Procedure section 1286.2, subdivision (a)(6) states: "(a) Subject to Section 1286.4, the court shall vacate the award if the court determines any of the following: [¶] . . . [¶] (6) An arbitrator making the award either: (A) failed to disclose within the time required for disclosure a ground for disqualification of which the arbitrator was then aware; or (B) was subject to disqualification upon grounds specified in Section 1281.91 but failed upon receipt of timely demand to disqualify himself or herself as required by that provision. However, this subdivision does not apply to arbitration proceedings conducted under a collective bargaining agreement between employers and employees or between their respective representatives."

document production, information exchanges, and subpoenas. (NASD Code of Arbitration Procedure, rule 10321; NYSE rule 619.[9]) Further, under the NASD and NYSE rules, an arbitrator retains broad powers to resolve prehearing disclosure disputes including directing production of documents, issuance of subpoenas, and appearances of witnesses. (NASD Code of Arbitration Procedure, rule 10321(d)-(e); NYSE rule 619(d)-(e).[10]) Further, plaintiff's third cause of action is for wrongful termination in violation of

---

[9]NASD Code of Arbitration Procedure, rule 10321 provides in part: "(a) Requests for Documents and Information [¶] The parties shall cooperate to the fullest extent practicable in the voluntary exchange of documents and information to expedite the arbitration. Any request for documents or other information should be specific, relate to the matter in controversy, and afford the party to whom the request is made a reasonable period of time to respond without interfering with the time set for the hearing. [¶] (b) Document Production and Information Exchange [¶] (1) Any party may serve a written request for information or documents ('information request') upon another party 45 calendar days or more after service of the Statement of Claim by the Director of Arbitration or upon filing of the Answer, whichever is earlier. The requesting party shall serve the information request on all parties and file a copy with the Director of Arbitration. The parties shall endeavor to resolve disputes regarding an information request prior to serving any objection to the request. Such efforts shall be set forth in the objection." NYSE rule 619(a)-(b)(1) provides: "The parties shall cooperate to the fullest extent practicable in the voluntary exchange of documents and information to expedite the arbitration. Any request for documents or other information should be specific, relate to the matter in controversy, and afford the party to whom the request is made a reasonable period of time to respond without interfering with the time set for the hearing. [¶] (b) Document Production and Information Exchange [¶] (1) Any party may serve a written request for information or documents ('information request') upon another party twenty (20) business days or more after service of the Statement of Claim by the Director Arbitration or upon filing of the Answer, whichever is earlier. The requesting party shall serve the information request on all parties and file a copy with the Director of Arbitration. The parties shall endeavor to resolve disputes regarding an information request prior to serving any objection to the request. Such efforts shall be set forth in the objection."

[10]NASD Code of Arbitration Procedure, rules 10321(d) through (e) state in part: "(d)(1) Upon the written request of a party, an arbitrator, or at the discretion of the Director of Arbitration, a pre-hearing conference shall be scheduled. The Director of Arbitration shall set the time and place of a pre-hearing conference and appoint a person to preside. . . . The presiding person shall seek to achieve agreement among the parties on any issue which relates to the pre-hearing process or to the hearing, including but not limited to exchange of information, exchange or production of documents, identification of witnesses, identification and exchange of hearing documents, stipulation of facts, identification and briefing of contested issues, and any other matters which will expedite the arbitration proceedings. [¶] (2) Any issues raised at the pre-hearing conference that are not resolved may be referred to a single member of the arbitration panel for decision. [¶] (e) Decisions by Selected Arbitrator [¶] The Director of Arbitration may appoint a single member of the arbitration panel to decide all unresolved issues under this Rule. . . . Such arbitrator shall be authorized to act on behalf of the panel to issue subpoenas, direct appearances of witnesses and production of documents, set deadlines for compliance, and issue any other ruling which will expedite the arbitration proceedings. . . . The arbitrator may elect to refer any issue under this Rule to the full panel." NYSE rules 619(d) though (e) states in part: "(d) Pre-Hearing Conference [¶] (1) Upon the written request of a party, an arbitrator, or at the discretion of the Director of Arbitration, a pre-hearing conference shall be scheduled. The Director of Arbitration shall set the time and place of a pre-hearing conference and appoint a person to preside. . . . The

fundamental public policy. *Armendariz* deems the provisions of Code of Civil Procedure section 1283.05 as incorporated into an arbitration clause involving a Fair Employment and Housing Act claim. (*Armendariz, supra,* 24 Cal.4th at pp. 104-106; see *Craig v. Brown & Root, Inc.* (2000) 84 Cal.App.4th 416, 422 [100 Cal.Rptr.2d 818].) The California Supreme Court has explicitly held the *Armendariz* requirements also apply to a claim for wrongful termination in violation of fundamental public policy. (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pp. 1080-1081.) No showing has been made that the discovery procedures are substantively unconscionable. (See *Gilmer v. Interstate/Johnson Lane Corp., supra,* 500 U.S. at pp. 30-31 [111 S.Ct. at pp. 1654-1655]; *Armendariz, supra,* 24 Cal.4th at pp. 104-105.)

Moreover, we disagree with plaintiff the deposition and interrogatory procedure set forth in NASD Code of Arbitration Procedure, rule 10334(f)(2), which applies to large or complex cases, renders the arbitration agreements unenforceable. NASD rule 10334(f)(2) provides: "Arbitrators are authorized to order, at the request of a party, the deposition of, or the propounding of interrogatories to, persons who may possess information relevant to the disposition of an eligible matter and who may not be available to testify at the hearings. Unless otherwise agreed to by the parties, depositions or interrogatories shall be limited to determining and preserving testimony and facts relevant to the determination of the matter, not for conducting discovery. Unless otherwise agreed to by the parties, interrogatories shall be limited to twenty (20) questions, including parts and subparts. Arbitrators are authorized to order audio/video depositions or audio/video site review." The arbitration agreement in the offer letter specifically provides "all discovery" will be conducted in accordance with California state court procedures. Accordingly, the parties have already agreed that they are bound by California's Civil Discovery Act (Code Civ. Proc., § 2016 et seq.) so that NASD rule 10334(f)(2) is inapplicable to this case. No substantive unconscionability finding is warranted on inadequate discovery grounds.

---

presiding person shall seek to achieve agreement among the parties on any issues that relate to the pre-hearing process or to the hearing, including but not limited to, the exchange of information, exchange or production of documents, identification of witnesses, identification and exchange of hearing documents, stipulations of fact, identification and briefing of contested issues, and any other matter which will expedite the arbitration proceedings. [¶] (2) Any issues raised at the pre-hearing conference that are not resolved may be referred by the Director of Arbitration to a single public member of the Arbitration Panel for decision. [¶] (e) Decisions by Selected Arbitrator [¶] The Director of Arbitration may appoint a single member of the Arbitration Panel to decide all unresolved issues referred to under this Section. Such arbitrator shall be authorized to act on behalf of the panel to issue subpoenas, direct appearances of witnesses and production of documents, set deadlines and issue any other ruling which will expedite the arbitration proceeding or is necessary to permit any party to develop fully its case. . . ."

f) *the written opinion*

■ Plaintiff further contends that the nonattorney arbitrators are not required to provide a reasoned award because, under NASD Code of Arbitration Procedure, rule 10334(g), the parties must "specifically agree" that the award be accompanied by a statement of reasons or basis for the award. This argument lacks merit because NASD rule 10334(g) provides in its entirety: "The award of the arbitrators shall be in the form prescribed in rule 10330. In addition, all parties may specifically agree that the award shall be accompanied by a statement of reasons or basis of the award." NASD rule 10330 requires that all arbitration awards be in writing. The awards must contain a summary of issues, a description of the award, and a statement of any other issues resolved. (*Ibid.*) The awards must be made available to the public. (*Ibid.*) Likewise, NYSE rule 627 specifically provides for arbitration awards to be in writing and summary of the issues. In addition, under both NASD rule 10326 and NYSE rule 623, a verbatim transcript of the proceedings must be maintained. (See *Gilmer v. Interstate/Johnson Lane Corp.*, *supra*, 500 U.S. at pp. 31-32 & fn. 4 [111 S.Ct. at pp. 1654-1655] [finding such procedures to be sufficient to ensure that under limited judicial review of whether arbitrators comply with the requirements of the law]; *Shearson/ American Exp., Inc. v. McMahon*, *supra*, 482 U.S. at p. 232 [107 S.Ct. at pp. 2340-2341].) NASD rule 10334(g) does not render the arbitration agreements substantively unconscionable.

g) *the mutual obligation to arbitrate*

■ Plaintiff contends that NASD Code of Arbitration Procedure, rule 10335 is substantively unconscionable because injunctive relief is exempted from the arbitration agreement. Plaintiff claims that the exemption creates a unilateral right because the employer is the party most likely to bring such a request. ■ An arbitration agreement is substantively unconscionable if it requires the employee but not the employer to arbitrate claims. (*Armendariz*, *supra*, 24 Cal.4th at pp. 115-121.) If the employer imposes the arbitration agreement as a condition of employment, it is not sufficient that the employer agrees to be bound by the arbitrator's resolution of the employee's job-related claims. (*Id.* at p. 118.)

■ In this case, the offer letter provides, "All disputes arising out of your employment or the termination of your employment . . . will be submitted to and resolved exclusively by a panel of arbitrators from the NASD Dispute Resolution, Inc. or the New York Stock Exchange." This language creates a mutual obligation to compel CIBC to arbitrate any claims against the employee. (*Little v. Auto Stiegler, Inc.*, *supra*, 29 Cal.4th at pp.

1075-1076, fn. 1; *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].) In addition, as plaintiff concedes, NASD and NYSE rules contain language which mutually bind the parties to arbitration. (NASD Code of Arbitration Procedure, rule 10201; NYSE rule 600(a); see also *Gilmer v. Interstate/Johnson Lane Corp., supra,* 500 U.S. at p. 33 [111 S.Ct. at pp. 1655-1656]; *Desiderio v. National Assn. of Securities Dealers, Inc.* (2d Cir. 1999) 191 F.3d 198, 207.)

Furthermore, *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at pages 176-178, upon which plaintiff relies, does not support his argument that the existence of an injunctive relief exemption from arbitration renders the present agreement unenforceable. In *Mercuro* the arbitration agreement excluded certain injunctive relief claims involving intellectual property violations, unfair competition, or unauthorized disclosure of trade secrets or confidential information. There is no such exemption in this case to render the agreements substantively unconscionable. (See *Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pp. 1075-1076, fn. 1.)

C. *Severability*

 Defendants contend that any unconscionable provisions may be severed from the agreement, thereby allowing the arbitration to proceed. An agreement to arbitrate may be enforced if the unconscionable provisions can be severed from the agreement. (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at p. 1075; *Armendariz, supra,* 24 Cal.4th at p. 124.) The "overreaching inquiry" in such cases is whether the interests of justice will be furthered by severance. (*Armendariz, supra,* 24 Cal.4th at p. 124; *Beynon v. Garden Grove Medical Group* (1980) 100 Cal.App.3d 698, 713 [161 Cal.Rptr. 146].) In *Armendariz,* the court held: "The basic principles of severability that emerge from Civil Code section 1599 and the case law of illegal contracts appear fully applicable to the doctrine of unconscionability. Courts are to look to the various purposes of the contract. If the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced. If the illegality is collateral to the main purpose of the contract, and the illegal provision can be extirpated from the contract by means of severance or restriction, then such severance and restriction are appropriate." (*Armendariz, supra,* 24 Cal.4th at p. 124; see *Blake v. Ecker* (2001) 93 Cal.App.4th 728, 744-745 [113 Cal.Rptr.2d 422].)

 As we concluded above, the arbitration clauses are procedurally unconscionable because they must be executed as a condition of employment. However, the arbitration agreements, specifically the execution of form U-4, are mandated by federal and state law. The agreements are

substantively unconscionable in that, at the time of execution, they created the risk that the employee would be required to pay costs prohibited by *Armendariz, supra,* 24 Cal.4th at pages 107-115 and *Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at pages 1080-1081. Plaintiff has failed to demonstrate the existence of additional substantive unconscionable provisions in the arbitration procedures or that the agreements were permeated with unfairness. Thus, with the exception of the cost provision, the arbitration agreements are otherwise enforceable. The arbitration agreements are not so "permeated" with unconscionable provisions that it cannot be saved. (*Armendariz, supra,* 24 Cal.4th at pp. 122-125; cf. *Mercuro v. Superior Court, supra,* 96 Cal.App.4th at pp. 182, 184.) Accordingly, the unconscionable provision requiring payment of the fees can be severed from the arbitration agreements. (*Little v. Auto Stiegler, Inc., supra,* 29 Cal.4th at p. 1075; *Saika v. Gold* (1996) 49 Cal.App.4th 1074, 1082 [56 Cal.Rptr.2d 922]; *Beynon v. Garden Grove Medical Group, supra,* 100 Cal.App.3d at p. 713.)

### D. *Judicial Notice of Federal Lawsuit*

 Plaintiff has requested we take judicial notice of a complaint filed in the United States District Court for the Northern District of California by the NASD Dispute Resolution against the California Judicial Council, Chief Justice Ronald M. George, and other Judicial Council members. The lawsuit was brought to challenge the applicability of new arbitrator disclosure requirements to NASD and NYSE arbitrations. It has been dismissed under Eleventh Amendment grounds and is on appeal before the Ninth Circuit Court of Appeals. (*NASD Dispute Resolution, Inc. v. Judicial Council* (N.D.Cal. 2002) 232 F. Supp.2d 1055, 1058-1066.) Plaintiff asserts that the federal court appeal has been brought to delay resolution of the lawsuit because the NASD and NYSE have been refusing to process arbitration matters due to the adoption of the Code of Civil Procedure section 1281.85 and the Ethical Standards for Neutral Arbitrators in Contractual Arbitration promulgated by the Judicial Council. Of course, plaintiff's inability to have an arbitrator appointed is subject to the right to petition the court to appoint an arbitrator. (Code Civ. Proc., § 1281.6.) In any event, the federal lawsuit is not relevant to the issues raised by the appeal. Accordingly, the judicial notice request is denied. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 87, fn. 5 [124 Cal.Rptr.2d 530, 52 P.3d 703]; *Thompson v. Department of Corrections* (2001) 25 Cal.4th 117, 128, fn. 5 [105 Cal.Rptr.2d 46, 18 P.3d 1198].)

### IV. DISPOSITION

The order denying the petition to compel arbitration is reversed. The trial court is to enter a new order granting the motion to compel arbitration

consistent with the views concerning arbitration costs set forth in this opinion. Defendants, CIBC World Markets Corp. and Daniel Miller, are entitled to their costs on appeal from plaintiff, Michael J. McManus.

Armstrong, J., concurred.

**MOSK, J.**—I concur in the result. I do so because the record does not suggest to what extent the employment agreement and the cost provision of the arbitration clause or of the applicable arbitration rules were negotiable. The Supreme Court in *Armendariz v. Foundation Health Psychare Services, Inc.* (2000) 24 Cal.4th 83, 110-111 [99 Cal.Rptr.2d 745, 6 P.3d 669] stated, "we conclude that when an employer imposes mandatory arbitration as a condition of employment, the arbitration agreement or arbitration process cannot generally require the employee to bear any *type* of expense that the employee would not be required to bear if he or she were free to bring the action in court." Thus, although arbitration clauses imposed in employment contracts "generally" are subject to certain cost requirements—at least in some types of actions—there may be employment agreements to which *Armendariz*'s requirements for arbitration do not apply. The Supreme Court's rejection of "a case-by-case approach to arbitration costs" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1084 [130 Cal.Rptr.2d 892, 63 P.3d 979]) concerned evaluations of cost-sharing provisions, not whether the employment arrangement was subject to the minimum procedural requirements set forth in *Armendariz.*

A petition for a rehearing was denied May 30, 2003, and respondent's petition for review by the Supreme Court was denied August 13, 2003.