[No. D039273. Fourth Dist., Div. One. Aug. 2, 2002.]

PARDEE CONSTRUCTION COMPANY, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
IVAN ERNESTO RODRIGUEZ et al., Real Parties in Interest.

**COUNSEL**

Koeller, Nebeker, Carlson & Haluck, Robert C. Carlson and Anna Tomalino Amundson for Petitioner.

No appearance for Respondent.

The Miller Law Firm, Thomas E. Miller, John H. Toohey; Higgs, Fletcher & Mack and John Morris for Real Parties in Interest.

**OPINION**

**KREMER, P. J.**—In this matter arising from construction defect litigation in the superior court, petitioner Pardee Construction Company (Pardee)

seeks a writ of mandate directing the court to vacate an order denying Pardee's motion for stay of the proceedings and appointment of a judicial referee. Pardee contends the court erred in concluding provisions in Pardee's agreements with real parties in interest Ivan Ernesto. Rodriguez et al.[1] (together plaintiffs) that required the parties to submit their disputes to judicial reference were unconscionable and contrary to statutory law/public policy. Concluding the court properly denied Pardee's motion, we deny the petition.

I

INTRODUCTION

This case involves seven detached single-family "entry-level" residences[2] built in the late 1990's in the Otay Mesa area of San Diego.[3] In buying those homes from Pardee, plaintiffs signed agreements entitled "Offer to Purchase and Escrow Instructions." Each agreement contained a paragraph 15 entitled "JUDICIAL REFERENCE — TRIAL BY JUDGE IN COURT OF COMPETENT JURISDICTION — WAIVER OF TRIAL BY JURY." Printed entirely in capital letters and single-spaced, paragraph 15 presented the appearance of a dense block of verbiage.

Paragraph 15's first subparagraph provided that all agreement-related claims, including those for construction defects, would be determined by a general reference conducted by a single referee (a retired superior court judge) appointed under Code of Civil Procedure[4] section 638 et seq.[5] In particular, the referee would try all issues relating to such claims, whether of fact or law, and report a statement of decision; the referee would have power to grant all legal and equitable remedies; the parties would be deemed to have waived their rights to recover punitive damages; the parties would be entitled to the same discovery rights available in a court action; the referee

---

[1]Other real parties in interest are Sasha Rodriguez, Mario Contreras-Garcia, Blanca Contreras-Garcia, Raul A. Gonzalez-Soto, Griselda E. De Lara, Oscar E. Gonzalez, Teresa Elizabeth De Lara, Jesus Martinez, Maria Isabel Hernandez, George E. Barnes, Edward T. Moran and Gretchen B. Moran.

[2]In their legal arguments here and in the superior court, both parties have described the properties as "entry level."

[3]In the introduction to its petition, Pardee states the case presently involves 13 individual plaintiffs but could involve up to 800 homes if certified as a class action.

[4]All further statutory references are to the Code of Civil Procedure unless otherwise specified.

[5]Section 638 provides in relevant part: "A referee may be appointed . . . upon the motion of a party to a written contract or lease that provides that any controversy arising therefrom shall be heard by a referee if the court finds a reference agreement exists between the parties: [¶] (a) To hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision."

would apply legal rules including the rules of evidence; and any dispute about the validity or interpretation of the judicial reference provision would be decided by a court without a jury.

Paragraph 15's second subparagraph provided that if the judicial reference provisions were found invalid, all claims would be tried by a court without a jury and the parties would be deemed to have waived the right to punitive damages. Paragraph 15's third subparagraph provided that each word or group of words in paragraph 15 would be deemed severable, and that if any were held to be invalid, the decision would not affect the validity of the remaining portions of the paragraph. The parties initialed paragraph 15 at its end.

In June 2001 plaintiffs filed a class action suit against Pardee for construction defects in the homes and underlying lots. In November 2001 Pardee appeared specially to seek a stay of the proceedings and appointment of a judicial referee under the terms of the parties' agreements. In opposing Pardee's motion, plaintiffs claimed the parties' agreements, including their judicial reference provisions, were contracts of adhesion, unconscionable and against public policy. After hearing, the superior court denied Pardee's motion.

In denying Pardee's motion, the superior court concluded the parties' agreements were contracts of adhesion; the agreements' provisions requiring submission to judicial reference were unconscionable; the agreements' provisions effecting waiver of the right to recover punitive damages were contrary to public policy (Civ. Code, § 1668); and the agreements in their entirety were contrary to the public policy against compelling homeowners to submit construction defect claims to alternative dispute resolution (cf. Code Civ. Proc., § 1298.7).

In petitioning for a writ of mandate, Pardee contends the superior court's denial of its motion for stay and judicial reference was unreasonable, prejudicial, and contrary to law because (1) the parties' agreements were assertedly not contracts of adhesion; (2) the portions of the agreements' judicial reference provisions effecting the waiver of the parties' rights to jury trial and to recover punitive damages were assertedly not unconscionable or contrary to public policy (Civ. Code, § 1668); and (3) as applying only to binding arbitration, Code of Civil Procedure section 1298.7 is assertedly inapplicable to contractual provisions requiring judicial reference. Since the court properly denied Pardee's motion, we deny the petition for writ of mandate.

## II

## DISCUSSION

 Our analysis is narrowly tailored to this record, in particular to the parties' agreements. We do not decide any issue as a matter of law. Instead, on this record we simply conclude the parties' agreements were adhesive contracts fatally infected with procedural and substantive unconscionability.

### A

#### *The Purchase Agreements Were Adhesion Contracts*

The superior court concluded the parties' agreements were contracts of adhesion because plaintiffs were presented with "standardized" contracts "drafted" by Pardee "and imposed on plaintiffs who could only accept or reject" them. Thus, in attacking the court's denial of its motion for judicial reference, Pardee first contends the parties' agreements were not contracts of adhesion. More particularly, Pardee asserts the court "eliminated" the parties' contractual rights to judicial reference despite plaintiffs' failure to produce evidence that the parties' agreements were contracts of adhesion. Specifically, Pardee argues plaintiffs did not present evidence that if plaintiffs had refused to proceed with their home purchases from Pardee, plaintiffs could not have obtained other tract houses in other developments in the same general area from different sellers with purchase contracts that did not include judicial reference provisions.

 " 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' " (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 113 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*); *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 826 [102 Cal.Rptr.2d 1]; *Izzi v. Mesquite Country Club* (1986) 186 Cal.App.3d 1309, 1318 [231 Cal.Rptr. 315].) "If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' [Citation.] 'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if

consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable." ' [Citations.] Subsequent cases have referred to both the 'reasonable expectations' and the 'oppressive' limitations as being aspects of unconscionability." (*Armendariz, supra,* at p. 113.)

"Unconscionability analysis begins with an inquiry into whether the contract is one of adhesion." (*Armendariz, supra,* 24 Cal.4th at p. 113.) ██ Although this record contains no specific evidence of adhesion, the introduction to Pardee's petition alleged that plaintiffs' lawsuit was brought by 13 individuals, with 11 of those plaintiffs potentially filing suit as class representatives for up to 187 additional sets of class members (for the project where plaintiffs live) or potentially 800 additional sets of class members (for the master plan development where plaintiffs' project is located); and each and every purchase agreement for the project and the entire master plan development included the judicial reference provision. By thus acknowledging that none of the hundreds of home purchasers struck out the judicial reference provision, Pardee has effectively admitted the parties' agreements were adhesive. Further, as potential buyers interested in Pardee's entry-level homes, plaintiffs were unlikely to have significant economic bargaining power against developer Pardee. Moreover, since judicial reference provisions were contained in agreements for purchase of all homes in Pardee's large development, plaintiffs had little choice other than to sign those agreements as presented by Pardee. As stated by the superior court at the hearing on Pardee's motion, the situation presented each buyer with "a take-it-or-leave-it proposition"; and since each buyer was "buying a house," not "a piece of sporting equipment" or some other "regular type of product," factors such as "location," "view," and "set-back" made it "a pretty unique purchase," one that "for most people" is "the biggest purchase they will ever make in their life." The court also stated that "as a practical matter," Pardee's argument that plaintiffs "can go elsewhere if they don't like it" flies "in the face" of "the uniqueness of a home."

In sum, the superior court properly concluded the parties' agreements were adhesive contracts. Finally, in any event, even if the parties' agreements were deemed not to be adhesive, plaintiffs have established the judicial reference provisions of those agreements were unconscionable at the time such agreements were made. (*Armendariz, supra,* 24 Cal.4th at p. 113; *Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 828.)[6]

---

[6]In *Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at page 828, the appellate court stated that whether an agreement's clause "is characterized as an adhesion

B

*The Agreements' Judicial Reference Provisions Were Unconscionable*

Pardee meritlessly contends the judicial reference provisions of the parties' agreements effectively waiving their rights to jury trial and to recover punitive damages were not procedurally or substantively unconscionable.

■ "Unconscionability is ultimately a question of law for the court." (*American Software, Inc. v. Ali* (1996) 46 Cal.App.4th 1386, 1391 [54 Cal.Rptr.2d 477].) Unconscionability " 'has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' [Citations.] In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz, supra,* 24 Cal.4th at p. 114.) In essence, "unconscionability has both a procedural and a substantive element, both of which must be present to render a contract unenforceable." (*24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th 1199, 1212-1213 [78 Cal.Rptr.2d 533].) However, "[a]lthough both elements must be present before a contract or contract provision is rendered unenforceable on grounds of unconscionability, they are reviewed in tandem such that 'the greater the degree of substantive unconscionability, the less the degree of procedural unconscionability that is required to annul the contract or clause.' " (*Kinney v. United HealthCare Services, Inc.* (1999) 70 Cal.App.4th 1322, 1329 [83 Cal.Rptr.2d 348] (*Kinney*).)

1

*Issue of Procedural Unconscionability*

■ " 'Procedural unconscionability' concerns the manner in which the contract was negotiated and the circumstances of the parties at that time."

---

contract or not, the question of the enforceability of the clause remains . . . ." Further, "no contract, whether adhesive or otherwise, will be enforced if it is unconscionable." (*Ibid.*)

(*Kinney, supra*, 70 Cal.App.4th at p. 1329; *American Software, Inc. v. Ali, supra*, 46 Cal.App.4th at p. 1390.) Procedural unconscionability "focuses on factors of oppression and surprise. [Citation.] The oppression component arises from an inequality of bargaining power of the parties to the contract and an absence of real negotiation or a meaningful choice on the part of the weaker party." (*Kinney*, at p. 1329.) "The second component of procedural unconscionability encompasses an aspect of surprise, with the terms to which the party supposedly agreed being hidden in a prolix printed form drafted by the party seeking to enforce them." (*Ibid.*; accord, *Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 828.)

 In contending the judicial reference provisions of the parties' agreements were not procedurally unconscionable at the time those agreements were made (*Coast Plaza Doctors Hospital v. Blue Cross of California* (2000) 83 Cal.App.4th 677, 688 [99 Cal.Rptr.2d 809]), Pardee contends plaintiffs failed to present any evidence that the agreements were oppressive or that their judicial reference provisions containing waivers of the rights to jury trial and to recover punitive damages were a surprise. Specifically, Pardee asserts plaintiffs made no attempt to present evidence that they were unable to buy similar homes elsewhere under purchase contracts that did not include judicial reference provisions. However, this record reveals that procedural unconscionability existed at the time the parties' agreements were formed.

With respect to the oppression component of procedural unconscionability, the parties had unequal bargaining power. As discussed, as potential purchasers of entry-level homes, plaintiffs stood in an economic position well below Pardee, the developer of hundreds of homes in the master plan development. (*Kinney, supra*, 70 Cal.App.4th at p. 1329.) As also discussed, since judicial reference provisions were contained in all agreements for purchase of homes in the entirety of Pardee's master plan development of several hundred units, plaintiffs had no meaningful choice with respect to accepting those provisions. (*Ibid.*) Further, as reflected by Pardee's admission that none of the hundreds of home buyers in the development struck out the judicial reference provision contained in every purchase agreement, there was no real negotiation by the parties about removal of those provisions. (*Ibid.*)

With respect to the surprise component of procedural unconscionability, the essential elements of the judicial reference provisions, including the waiver of jury trial, were buried in the form contracts drafted by Pardee. (*Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 828; *Kinney, supra*, 70 Cal.App.4th at p. 1329.) First, the judicial reference provisions in paragraph 15 of the parties' agreements were physically

difficult to read as printed in dense, single-spaced capital letters. Further, the term "JUDICIAL REFERENCE" in paragraph 15's caption did not explain the essence of the judicial reference provisions or otherwise convey anything meaningful to an entry-level purchaser. Moreover, although accurate, the next term in paragraph 15's caption, "TRIAL BY JUDGE IN COURT OF COMPETENT JURISDICTION," was misleading as applying only in the event the judicial reference provisions were not enforced. Additionally, paragraph 15's caption did not mention that the purchaser was waiving the right to punitive damages.[7]

Finally, a significant element of the surprise component of paragraph 15's procedural unconscionability was the absence of any mention of referee's fees or responsibility for their payment, thus leaving open the potential that the buyers might be liable, in part or whole, for those fees. As counsel indicated at oral argument, a usual referee's fee in San Diego was $200 to $300 per hour. Unlike attorney fees contingent on some measure of plaintiffs' success, the referee's fees potentially owed by plaintiffs could likely accrue at that rate to an amount constituting heavy burdens for buyers of entry-level homes. Since savings in costs purportedly constituted a fundamental rationale for the judicial reference provisions, it is particularly surprising that nothing in the caption or body of paragraph 15 mentioned referee's fees or responsibility for paying those fees.

In sum, the judicial reference provisions of the parties' agreements were procedurally unconscionable because (1) there was no real bargaining about those provisions, (2) paragraph 15 was difficult to read and misleading, and (3) the agreements omitted mention of the economically significant matter of referee's fees.

2

*Issue of Substantive Unconscionability*

■ "Substantive unconscionability focuses on the actual terms of the agreement . . . ." (*American Software, Inc. v. Ali, supra,* 46 Cal.App.4th at p. 1390.) "While courts have defined the substantive element in various ways, it traditionally involves contract terms that are so one-sided as to 'shock the conscience,' or that impose harsh or oppressive terms." (*24 Hour Fitness, Inc. v. Superior Court, supra,* 66 Cal.App.4th at p. 1213; accord, *Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p.

---

[7]As the superior court observed, although plaintiffs have not pleaded entitlement to punitive damages, plaintiffs might amend their complaint to seek punitive damages following discovery.

829.) Oppression is present when an agreement includes terms serving to limit the obligations or liability of the stronger party. (*Madden v. Kaiser Foundation Hospitals* (1976) 17 Cal.3d 699, 713 [131 Cal.Rptr. 882, 552 P.2d 1178].) Thus, in essence, " '[s]ubstantive unconscionability' focuses on the terms of the agreement and whether those terms are 'so one-sided as to *"shock the conscience."* ' " (*Kinney, supra,* 70 Cal.App.4th at p. 1330; *American Software, Inc.,* at p. 1391.)

 The record indicates the judicial reference provisions of the parties' agreements were substantively unconscionable at the time those agreements were formed. As Pardee virtually concedes, paragraph 15's terms effecting a waiver of the right to recover punitive damages, albeit potentially severable from the remainder of that paragraph, were substantively unconscionable as, in practical reality, only for Pardee's benefit. (Cf. Civ. Code, § 1668;[8] *Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 829; *Kinney, supra,* 70 Cal.App.4th at pp. 1330-1331.)

Further, although plaintiffs may "certainly" waive their constitutional right to a jury trial, " 'the right to pursue claims in a judicial forum is a substantial right and one not lightly to be deemed waived.' " (*Villa Milano Homeowners Assn. v. Il Davorge, supra,* 84 Cal.App.4th at p. 829; *Marsch v. Williams* (1994) 23 Cal.App.4th 250, 254 [28 Cal.Rptr.2d 398].) Hence, before upholding the provisions of the parties' agreements purporting to effect a waiver of plaintiffs' constitutional right to trial by jury, we must closely scrutinize the impact of the waiver on the parties. Although in an appropriate case such waiver might be advantageous to plaintiffs as providing efficiencies of speed and economy not always afforded in a jury trial, nothing in the record suggests this is such a case. At oral argument both counsel represented that significant portions of construction defect cases are already commonly sent to judicial reference. Thus, the only potential savings to litigants from jury waivers would be that actual time in trial might be shorter. However, there was no evidence showing why a referee-tried matter would be shorter than a jury trial (except for the time incurred in jury selection).[9]

Accordingly, since Pardee has not alleged or shown that in San Diego County cases would be heard appreciably sooner in judicial reference than in

---

[8]Civil Code section 1668 provides: "All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."

[9]At oral argument counsel also stated that matters in judicial reference come on for trial sooner than jury-tried cases, pointing out that cases in Orange County regularly come on for trial after three to four years from their commencement. However, as counsel admitted at oral argument, cases in San Diego County come on for trial with little or no delay. Hence, any advantage arising from referee-tried matters purportedly being heard sooner is obviated.

a court of jurisdiction or that proceedings once started in judicial reference would be appreciably shorter than in a jury trial, we cannot say that waiver of a jury trial in this case would in fact result in any significant saving of time or costs. Moreover, nothing in the record suggests that buyers otherwise gained anything from waiving their substantial constitutional right to a jury trial. (*Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 829; *Marsch v. Williams, supra*, 23 Cal.App.4th at p. 254.) Thus, as giving buyers nothing in return for such waiver, the judicial reference provisions of the parties' agreements were so one-sided as to be substantively unconscionable.

In sum, the superior court properly concluded the judicial reference provisions of the parties' agreements were unconscionable.

## C

*Court's Ruling Was Consistent with Public Policy*

Section 1298.7 provides: "In the event an arbitration provision is included in a contract or agreement covered by this title [sections 1298-1298.8 involving real estate contract arbitration], it shall not preclude or limit any right of action for bodily injury or wrongful death, or any right of action to which Section 337.1 [patent construction defect] or 337.15 [latent construction defect] is applicable."[10]

At the hearing on Pardee's motion for judicial reference, the court noted that "as opposed to any other type of case, we do have a statute, . . . Section 1298.7, which really talks about public policy of not requiring homeowners to submit their claims to Alternative Dispute Resolution." In its minute order denying Pardee's motion for judicial reference, the superior court concluded the parties' agreements "as a whole" were "contrary to the public policy against compelling homeowners to submit their construction defect claims to alternative dispute resolution. (See . . . § 1298.7.)"

Attacking the court's conclusion, Pardee contends section 1298.7 does not apply to contractual provisions requiring submission to judicial reference but instead only to provisions requiring binding arbitration. Further, Pardee contends the court improperly sought to use the statutory scheme involving binding arbitration to create public policy involving judicial reference. However, fairly read, the court's oral and written statements did not say section

---

[10]Sections 337.1 and 337.15 "pertain to litigation to recover damages for construction and design defects." (*Villa Milano Homeowners Assn. v. Il Davorge, supra*, 84 Cal.App.4th at p. 830.)

1298.7 was controlling here. Instead, the court simply indicated such statute expressed a legislative statement of public policy favoring a trial with full procedural and constitutional rights over alternative dispute resolution in the context of construction defect litigation. We believe the court properly concluded that although not controlling, section 1298.7 was informative in these circumstances involving judicial reference provisions in real estate sales documentation.

## III

### DISPOSITION

The petition is denied. This court's stay issued March 6, 2002, is vacated upon this decision becoming final. Real parties in interest to recover costs.

Haller, J., and McIntyre, J., concurred.

Petitioner's petition for review by the Supreme Court was denied November 20, 2002. Baxter, J., Chin, J., and Brown, J., were of the opinion that the petition should be granted.