[No. A116856. First Dist., Div. Two. July 23, 2008.]

PETER V. THOMPSON et al., Plaintiffs and Respondents, v.
TOLL DUBLIN, LLC, et al., Defendants and Appellants.

**COUNSEL**

Morgan Miller Blair, Kenneth M. Miller, Steven N. Holland and Kevin R. Brodehl for Defendants and Appellants.

Berding & Weil, Scott W. Barton and Steven R. Weinmann for Plaintiffs and Respondents.

**OPINION**

**KLINE, P. J.**—Defendants Toll Dublin, LLC (Toll Dublin), Toll Brothers Real Estate, Inc. (Toll Brothers), and James Whiteley Boyd (Boyd) (collectively, defendants) appeal the trial court's order denying their motion to compel arbitration after plaintiffs Peter V. Thompson, Deborah Thompson, Kim K. Thompson, Brooke Turner, Donna J. Covey, James Turner, Valerie Raymundo-Enrile, Efren D. Enrile, Jr., Alfred Toy, Jennie L. Toy, Sean Toy, Ai-Ling Chin, James C. Jung, Cynthia M. Lai, Joseph F. Castro, and Reno R. Arguello (collectively, plaintiffs) filed a lawsuit against defendants, raising various fraud-related claims arising from their purchase of condominiums built and/or sold by defendants.[1] Defendants claim that plaintiffs' lawsuit is precluded by an arbitration agreement previously entered into by both parties. Because we conclude (1) the arbitration agreement did not apply to plaintiffs' fraud-related claims, and (2) the arbitration provisions were, in any event, unconscionable and therefore unenforceable, we shall affirm the order.

---

[1] The complaint alleged that Toll Dublin "developed, planned, improved, designed, constructed, promoted, marketed, advertised and sold homes" in the Villas at Dublin Ranch Villages (the project), and that Toll Brothers and Boyd were "real estate agents and/or brokers involved in the sale of homes" at the project to plaintiffs.

## PROCEDURAL BACKGROUND

On October 3, 2006, plaintiffs filed a complaint for damages for (1) rescission based on fraud against Toll Dublin; (2) breach of fiduciary duty against Toll Brothers and Boyd; (3) constructive fraud against Toll Brothers and Boyd; (4) fraud against Toll Brothers and Boyd; (5) failure to disclose against Toll Brothers and Boyd; (6) breach of duty to be honest and truthful against Toll Brothers and Boyd; (7) rescission based on mutual mistake of fact against Toll Dublin; (8) rescission based on unilateral mistake of fact against Toll Dublin; and (9) fraudulent acts or practices (Bus. & Prof. Code, § 17200) against Toll Dublin.

On November 20, 2006, defendants filed a petition to compel arbitration and stay proceedings.

On January 11, 2007, the trial court denied defendants' motion to compel arbitration and stay proceedings.

On February 15, 2007, defendants filed a notice of appeal.

## FACTUAL BACKGROUND

During March and April 2005, plaintiffs entered into seven separate purchase agreements with Toll Dublin for the purchase of condominium units in "Building 13" at the Villas in Dublin Ranch Villages. According to plaintiffs' complaint, during construction, Toll Dublin failed to take necessary precautions to keep the interior of Building 13 from becoming saturated with water, allowed mold to form and fester inside of Building 13 and had actual knowledge of the wet, moldy, and unhealthful conditions, but hid and concealed these conditions from plaintiffs so that plaintiffs would close escrow on the problem homes. Plaintiffs' complaint also alleged that, shortly after plaintiffs closed escrow, in April and May 2006, "conditions inside Building 13 were so grave that [Toll Dublin] demanded that those plaintiffs that had actually moved in leave their new home and their belongings and relocate. Similarly, as to those plaintiffs that had not even moved into Building 13, [Toll Dublin] demanded that they not move in. [¶] Since June 2006 and continuing through the date of this Complaint, plaintiffs have been excluded from Building 13 while [Toll Dublin has] attempted to decontaminate Building 13." The complaint further alleged that Toll Brothers and Boyd also became aware of the wet and moldy conditions that existed within Building 13 in the months before the close of escrow, but failed to disclose the existence of these conditions to plaintiffs, and that plaintiffs were unaware of the existence of these conditions prior to the close of escrow.

## *DISCUSSION*

### I. *Background*

#### A. *The Arbitration Provisions*

In their purchase agreements, plaintiffs indicated, with their initials, that they had received copies of numerous additional documents—comprising some 800 pages—including, inter alia: a "Title 7 Addendum (Compliance with Civil Code Sections 895, et seq.)" (Title 7 Addendum); a "Title 7 Master and Dispute Resolution Declaration (Compliance with Civil Code)" (Title 7 Master Declaration);[2] and a "Declaration of Covenants, Conditions and Restrictions of the Villas at Dublin Ranch Villages" (CC&R's). A copy of Civil Code division 2, part 2, title 7 (Title 7; Civ. Code, § 895 et seq.) was also included.

The Title 7 Addendum, a 10-page document, provided, inter alia, in its initial two paragraphs:

"1. <u>TITLE 7—CIVIL CODE SECTIONS 895 ET SEQ.</u>: The term 'Title 7' refers to Title 7, Part 2 of Division 2 of the California Civil Code, Sections 895–945.5. This Addendum and all of the documents attached to it exist for the purpose of implementing the requirements of Title 7. Title 7 does a variety of things. It establishes standards for the performance of the Property and allows Seller to impose additional standards on itself. . . . Title 7 also requires that Buyer be given a complete copy of Title 7 and certain written notifications. . . . [¶] . . . [¶]

"2. <u>ATTACHED DOCUMENTS</u>: Attached to this Addendum are the Master Declaration for Title 7 and Dispute Resolution ('Title 7 Master Declaration') and the Individual Declaration and Notices for Title 7 and Dispute Resolution ('Title 7 Individual Agreement'). . . . These two (2) documents and their exhibits implement the requirements of Title 7 and contain all of the items referred to in Paragraph 1, above."

In addition to subsequent paragraphs related to such matters as an enhanced protection agreement, a fit and finish warranty, a maintenance manual,

---

[2] In their opposition to defendants' petition to compel arbitration and on appeal, plaintiffs denied receiving the Title 7 Master Declaration. In its ruling, the trial court acknowledged plaintiffs' contention that "they were not given any opportunity to see or review the Title 7 Master Declaration prior to their signatures on the Addendum agreeing that they did." The court's analysis, however, included a discussion of the Title 7 Master Declaration. For purposes of our analysis, we too shall assume, without deciding, that plaintiffs received a copy of the Title 7 Master Declaration before signing the Title 7 Addendum.

manufactured product information, and customer service information, it also provided information related to resolution of disputes, as follows:

"10. ALTERNATIVE DISPUTE RESOLUTION PROCEDURES: The Formal Claim Process described in Paragraph 9, above, provides a process intended to resolve disputes without filing an action (litigation or arbitration). If the Formal Claim Process does not result in a resolution of a dispute, or if a dispute is not subject to the Formal Claim Process, the dispute shall be resolved through the alternative binding dispute resolution procedures set forth in Sections 5.3 and 5.4 of the Title 7 Master Declaration which provide as follows:

" 'ARBITRATION OF DISPUTES

" '5.3 Mandatory Binding Arbitration: Any Dispute between any Owner and Builder or between the Association and Builder shall be resolved through the procedures established in this Title 7 Master Declaration. . . .

" '5.3.1 Federal Arbitration Act: If negotiations, mediation or other non-binding dispute resolution procedures, including the Formal Claim Process, fail to resolve the Dispute, then the Dispute shall be resolved by neutral, binding arbitration governed by the Federal Arbitration Act (9 U.S.C. §§ 1–16) and not by any court action except as provided for judicial review of arbitration proceedings under the Federal Arbitration Act. . . . [¶] . . . [¶]

" '5.4 Other Dispute Provisions:

" '5.4.1 Judicial Reference: To the extent that either party may be otherwise entitled to bring an action at law or if a court of competent jurisdiction determines that the dispute resolution procedure set forth in Section 5.3 is void or unenforceable, the entire matter shall proceed as one of judicial reference pursuant to California Code of Civil Procedure Section 638 et seq. . . .

" '5.4.2 Waiver of Jury Trial: BY TRANSFERRING TITLE AND BY TAKING TITLE TO PROPERTY, DECLARANT PARTIES, THE ASSOCIATION AND EACH OWNER GIVE UP AND WAIVE ANY RIGHT TO HAVE ANY DISPUTE TRIED BEFORE A JURY.' "

Following the "Arbitration of Disputes" provisions, the Title 7 Addendum contains the following language:

"STATUTORY NOTICE:

"NOTICE: BY INITIALING IN THE SPACE BELOW YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION DECIDED BY NEUTRAL ARBITRATION AS PROVIDED BY CALIFORNIA LAW AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR JURY TRIAL. BY INITIALING IN THE SPACE BELOW YOU ARE GIVING UP YOUR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL, UNLESS THOSE RIGHTS ARE SPECIFICALLY INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION. IF YOU REFUSE TO SUBMIT TO ARBITRATION AFTER AGREEING TO THIS PROVISION, YOU MAY BE COMPELLED TO ARBITRATE UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. YOUR AGREEMENT TO THIS ARBITRATION PROVISION IS VOLUNTARY.

"WE HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES ARISING OUT THE MATTERS [sic] INCLUDED IN THE 'ARBITRATION OF DISPUTES' PROVISION TO NEUTRAL ARBITRATION."

This language is followed by space for the buyer's, seller's, and affiliated general contractor's initials, all of which were initialed in each Title 7 Addendum.

Near the conclusion of the Title 7 Addendum, under the heading "16. BUYER ACKNOWLEDGEMENT OF REVIEW," plaintiffs each initialed their copy in acknowledgement "that a complete copy of this Addendum and all documents attached to this Addendum were provided to Buyer for review on [date received inserted]. The reason for the delay between that date and the date of this Addendum was to permit Buyer to thoroughly review this Addendum and all documents attached to this Addendum. By signing this Addendum, Buyer agrees that it has been provided adequate opportunity to read and review this Addendum and all documents attached to this Addendum and that Buyer agrees to abide by all of the terms of this Addendum and all documents attached to this Addendum." On the last page of the Title 7 Addendum, Toll Dublin, Toll Brothers, and each plaintiff signed and dated the document.

The Title 7 Master Declaration, a 17-page document, which includes the "Arbitration of Disputes" provisions quoted in the Title 7 Addendum, defines the term "dispute" as follows:

"2.10 DISPUTE: The term 'Dispute' shall mean any claim, issue or controversy that arises from or is related in any way to (i) the Project, (ii) the

relationship between Owner and Builder, or (iii) the relationship between the Association and Builder, whether contractual, statutory or in tort. The term 'Dispute' includes, but is not limited to claims, issues or controversies that arise from or are related to the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, the agreement between Declarant and an Owner to purchase a Condominium or any related agreement, an Enhanced Protection Agreement, a Fit & Finish Warranty, disclosures, or Issues. Disputes specifically include those relating to or arising out of any of the following:

"2.10.1 CLAIMED TITLE 7 VIOLATION: A claimed Title 7 Violation;

"2.10.2 PROPER REPAIR: Any disagreement as to whether a Claimed Title 7 Violation has been properly repaired;

"2.10.3 DAMAGES: Any disagreement as to the value of repairing a Claimed Title 7 Violation, the cost of repairing damage caused by the repair efforts . . . and all other fees and costs recoverable by contract or statute as a result of the Claimed Title 7 Violation; and

"2.10.4 TIMELINESS: Any disagreement concerning the timeliness of Builder's performance or an Owner's or the Association's notification under a Fit & Finish Warranty, an Enhanced Protection Agreement or the Formal Claim Process."

Only Toll Dublin and Toll Brothers signed this document, which was recorded on January 15, 2004, more than two years before any plaintiff closed escrow on a home.

The CC&R's, a 40-page document (not including exhibits), which was recorded on May 23, 2003, also contains an arbitration provision, as follows:

"10.3 DISPUTES INVOLVING DECLARANT: Any disputes, claims, issues or controversies between any Owner and Declarant or between the Association and Declarant regarding any matters that arise from or are in any way related to the Project, the relationship between Owner and Declarant or the relationship between the Association and Declarant, whether contractual or tort, including, but not limited to, the purchase, sale, condition, design, construction or materials used in construction of any portion of the Project, the agreement between Declarant [and] Owner to purchase a Condominium or any related agreement, any Claimed Title 7 Violation as defined in the Title 7 Master Declaration or a deficiency as that term is defined in Section 896 of the California Civil Code shall be resolved in accordance with the Claims

Processes and Dispute Resolution Procedures established in the applicable Title 7 Master Declaration."

A copy of Title 7, the statutory scheme contained in Civil Code section 895 et seq., which is concerned with construction defect claims, was also provided to plaintiffs and contains a provision that expressly excludes fraud claims: "[T]his title does not apply to any action by a claimant to enforce a contract or express contractual provision, or any action for fraud, personal injury, or violation of a statute." (Civ. Code, § 943, subd. (a); see also *id.*, § 931 [this part does not cover, inter alia, "fraud-based claims"].)

## B. *The Trial Court's Ruling*

The trial court denied defendants' motion to compel, concluding that the arbitration agreement was applicable only to claims brought pursuant to Title 7. The court first noted that the Title 7 Addendum states in its first paragraph that "[t]his Addendum and all of the documents attached to it exist for the purpose of implementing the requirements of Title 7." The court found that "[t]his language cannot be interpreted in any way other than that, unless specifically exempted by specific language in the Title 7 Addendum, the purpose of the Title 7 Addendum is for the sole purpose of implementing each of the requirements of Civil Code §§ 895–945.5. [¶] An analysis of the statutory scheme supports the conclusion that the claims at issue in this case are not subject to arbitration." The court then observed that "Title 7 concerns itself exclusively with actions relating to construction defects in new construction projects" and that causes of action for, inter alia, fraud were explicitly excluded from Title 7's statutory scheme. (See Civ. Code, §§ 931, 943.)

The court then stated that the contractual language of the Title 7 Addendum also supported its conclusion that the claims at issue were not subject to arbitration since, "[u]nlike the specific reference found in paragraph 3 of the Title 7 Addendum where it states that 'Seller . . . has elected not to be subject to the provisions of Chapter 2 of Title 7' (Civil Code §§ 896–897), there is no language in the Title 7 Addendum stating that the breadth of disputes covered by the arbitration agreement found in paragraph 10 of the Title 7 Addendum is different or contrary to the rather specific language found in Civil Code §§ 931 or 943."

The court then stated that the language in paragraph 10 of the Title 7 Addendum regarding a "dispute [that] is not subject to the formal claims process" was, at best, ambiguous insofar as that language refers to "a construction defect dispute or if it is intended to include fraud claims notwithstanding their specific exclusion by Civil Code § 943. [¶] Compounding the ambiguity, the [Title 7 Master Declaration] defines, at paragraph 2.10,

'Dispute' in broad and general language and then explains it 'specifically' includes claims 'relating to or arising out of any of the following:' and then lists four different types of claims, each of which relates directly to a construction defect type of dispute. . . . The Title 7 Master Declaration, in five, single-spaced pages . . . describes the 'Formal Claims Process' in exhaustive detail yet it never describes any act or process that could apply to any type of dispute other than one relating directly to a construction defect dispute." (Fn. omitted.)

The court concluded: "It is unreasonable to interpret the general language of either the Title 7 Addendum or the Title 7 Master Declaration as contradicting or superseding the specific language found in Civil Code § 943 which operates to exclude the type of fraud action filed herein from the remedies and procedures required by Title 7. [¶] It directly follows that the arbitration provisions contained in the Title 7 Addendum and in the Title 7 Master Declaration do not apply to the claims alleged by Plaintiffs in their Complaint."

## II. *Standard of Review*

On appeal from the denial of a motion to compel arbitration, " 'we review the arbitration agreement de novo to determine whether it is legally enforceable, applying general principles of California contract law. [Citations.]' [Citation.]" (*Baker v. Osborne Development Corp.* (2008) 159 Cal.App.4th 884, 892 [71 Cal.Rptr.3d 854] (*Baker*).) Unconscionability is a question of law subject to de novo review, "although factual issues may bear on that determination. [Citations.]" (*Ibid.*; accord, *Murphy v. Check 'n Go of California, Inc.* (2007) 156 Cal.App.4th 138, 144 [67 Cal.Rptr.3d 120].)

## III. *Breadth of the Arbitration Provisions*

We agree with the trial court's conclusion, based on both the Title 7 statutory scheme and the contractual language of the agreement between the parties, that the dispute resolution provisions in the Title 7 Addendum and the Title 7 Master Declaration apply only to Title 7 claims. First, the Title 7 Addendum states that "[t]his Addendum and all of the documents attached to it exist for the purpose of implementing the requirements of Title 7," which is expressly limited to actions involving construction defects in new construction projects.

Second, although read in isolation, the provision in the Title 7 Addendum regarding disputes "not subject to the Formal Claim Process" (¶ 10) and the broad definition of "Dispute" in the Title 7 Master Declaration (¶ 2.10) could possibly be read to apply to disputes other than Title 7-related

actions, in the context of the entire arbitration agreement, these general provisions cannot reasonably be interpreted to apply to non-Title 7 claims. (See, e.g., *Employers Reinsurance Co. v. Superior Court* (2008) 161 Cal.App.4th 906, 919 [74 Cal.Rptr.3d 733] [on review, " '[w]e consider the contract as a whole and interpret the language in context, rather than interpret a provision in isolation' "].) This is particularly true given the fact that the relevant documents' captions all refer to Title 7 and the specific language solely invokes Title 7, with no description of any possible claim other than those related to Title 7. (See, e.g., *McNeely v. Claremont Management Co.* (1962) 210 Cal.App.2d 749, 753 [27 Cal.Rptr. 87] [where general and particular contract provisions are inconsistent, particular controls general]; see also Code Civ. Proc., § 1859.)

 Defendants argue that, in light of the strong policy in favor of arbitration and the mandate that doubts about the scope of arbitrable issues should be resolved in favor of arbitration (see, e.g., *Wagner Construction Co. v. Pacific Mechanical Corp.* (2007) 41 Cal.4th 19, 25–26 [58 Cal.Rptr.3d 434, 157 P.3d 1029]; *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320–1321 [59 Cal.Rptr.3d 340]), any doubt or ambiguity regarding whether the arbitration agreement does in fact cover plaintiffs' claims should be resolved in favor of those claims' arbitrability. We disagree. The strong policy in favor of arbitration may not be used to permit a party to enforce provisions of an arbitration agreement that, as here, either do not exist or were so poorly drafted that another party cannot be presumed to have agreed to them. (See, e.g., *EFund Capital Partners v. Pless*, at p. 1321 [" ' " 'The fundamental rules of contract interpretation are based on the premise that the interpretation of a contract [including an arbitration agreement] must give effect to the *"mutual intention"* of the parties.' " ' "], quoting *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 [50 Cal.Rptr.3d 597, 145 P.3d 472], italics added.)

 Thus, because the agreement does not include non-Title 7 claims such as those raised in this action, we conclude the dispute resolution provisions in the Title 7 Addendum and the Title 7 Master Declaration do not apply to plaintiffs' action. (See *Baker, supra*, 159 Cal.App.4th at pp. 893–894.)[3]

---

[3] Defendants mistakenly rely on Civil Code section 914, subdivision (b), which provides: "Nothing in this title is intended to affect existing statutory or decisional law pertaining to the applicability, viability, or enforceability of alternative dispute resolution methods, alternative remedies, or *contractual arbitration*, judicial reference, or similar procedures requiring a binding resolution to enforce the other chapters of this title *or any other disputes between homeowners and builders*. Nothing in this title is intended to affect the applicability, viability, or enforceability, if any, of contractual arbitration or judicial reference after a nonadversarial

Moreover, even assuming the arbitration provisions in question could somehow be construed to cover non-Title 7 claims, we would still affirm the trial court's order because the provisions are unconscionable and hence unenforceable.

## IV. *Unconscionability*

Although the trial court's denial of defendants' motion to compel was not based on unconscionability, because the issue of unconscionability "is solely one of law [citation], is potentially dispositive, and because the parties' arguments on the issue are fully contained in the record, we address the issue here."[4] (*Greenbriar Homes Communities, Inc. v. Superior Court* (2004) 117 Cal.App.4th 337, 343 [11 Cal.Rptr.3d 371].)

■ The doctrine of unconscionability " 'has both a "procedural" and a "substantive" element,' the former focusing on ' "oppression" ' or ' "surprise" ' due to unequal bargaining power, the latter on ' "overly harsh" ' or ' "one-sided" ' results. [Citation.] 'The prevailing view is that [procedural and substantive unconscionability] must *both* be present in order for a court to exercise its discretion to refuse to enforce a contract or clause under the doctrine of unconscionability.' [Citation.] But they need not be present in the same degree. . . . In other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 [99 Cal.Rptr.2d 745, 6 P.3d 669] (*Armendariz*); see also Civ. Code, § 1670.5.)

■ In *Armendariz, supra,* 24 Cal.4th 83, our Supreme Court further explained that an unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion. [Citation.] 'The term [contract of adhesion] signifies a standardized contract, which, imposed and drafted by the

---

procedure or provision has been completed." (Italics added.) According to defendants, the trial court improperly ignored this section when it found that non-Title 7 claims were precluded from Title 7's statutory scheme.

We do not believe the trial court's ruling implies that whenever provisions related to Title 7 construction defect claims are included in an arbitration agreement, no non-Title 7 dispute provisions may also be included in that agreement. Clearly, inclusion of such provisions is permitted. (See Civ. Code, § 914, subd. (b).) In the particular circumstances of this case, however, the trial court correctly concluded that the language of the arbitration agreement does not include non-Title 7 claims but, rather, applies only to Title 7-related disputes, which expressly exclude fraud-related claims of the type raised here. (See Civ. Code, §§ 931, 943.)

[4] While, as previously noted, there is a factual dispute as to whether plaintiffs received the Title 7 Master Declaration before signing the Title 7 Addendum, resolution of that dispute is not necessary to our unconscionability determination.

party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.' [Citation.] If the contract is adhesive, the court must then determine whether 'other factors are present which, under established legal rules—legislative or judicial—operate to render it [unenforceable].' [Citation.]" (*Id.* at p. 113.) The court went on to explain: " 'Generally speaking, there are two judicially imposed limitations on the enforcement of adhesion contracts or provisions thereof. The first is that such a contract or provision which does not fall within the reasonable expectations of the weaker or "adhering" party will not be enforced against him. [Citations.] The second—a principle of equity applicable to all contracts generally—is that a contract or provision, even if consistent with the reasonable expectations of the parties, will be denied enforcement if, considered in its context, it is unduly oppressive or "unconscionable." ' [Citation.] Subsequent cases have referred to both the 'reasonable expectations' and the 'oppressive' limitations as being aspects of unconscionability. [Citation.]" (*Ibid.*)

Here, we conclude that the arbitration provisions in question were part of a contract of adhesion. "The reality of the transaction was that plaintiffs had to accept the arbitration provisions if they wanted to buy a house. The arbitration provisions were part of a preprinted form contract, presented on a take-it-or-leave-it basis." (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1293 [73 Cal.Rptr.3d 395] (*Bruni*); accord, *Pardee Construction Co. v. Superior Court* (2002) 100 Cal.App.4th 1081, 1087 [123 Cal.Rptr.2d 288] (*Pardee*).) Indeed, as previously noted, the Title 7 Master Declaration was signed solely by Toll Dublin and Toll Brothers and was recorded on January 15, 2004, more than two years before any plaintiff closed escrow on a home, which strongly suggests that these provisions were imposed on all buyers of the 264-home project.

These facts also demonstrate "oppression," which " 'arises from an inequality of bargaining power of the parties to the contact and an absence of real negotiation or a meaningful choice on the part of the weaker party.' " (*Pardee, supra,* 100 Cal.App.4th at p. 1089; accord, *Villa Milano Homeowners Assn. v. Il Davorge* (2000) 84 Cal.App.4th 819, 828–829 [102 Cal.Rptr.2d 1] [where CC&R's containing arbitration provisions "were drafted in toto by the developer and recorded years before the purchasers ever came to buy," oppression component of unconscionability was demonstrated]; cf. *Trend Homes, Inc. v. Superior Court* (2005) 131 Cal.App.4th 950, 958–959 [32 Cal.Rptr.3d 411] [finding no procedural unconscionability where there was no evidence, inter alia, that contested dispute resolution provision was included in every purchase agreement within development].)

Furthermore, the arbitration provisions, on their face, applied to a limited category of actions—Title 7 claims—and were included in approximately 800

pages of documents that were given to plaintiffs, which together comprised the purchase agreement. These facts reflect the "surprise" component of procedural unconscionability. (See *Pardee, supra,* 100 Cal.App.4th at pp. 1089–1090 [relevant provisions were buried in contract, language did not fully explain provisions, and one provision contained a misleading caption].)

Accordingly, in this contract of adhesion, oppression and surprise due to unequal bargaining power are both present, rendering the arbitration provisions procedurally unconscionable. (See *Armendariz, supra,* 24 Cal.4th at pp. 113–114.)

In addition, substantive unconscionability is present here. The purported inclusion of non-Title 7 claims in the arbitration provisions (see pt. III., *ante*), rendered the scope of the arbitration provisions unforeseeably broad, which would not have been within the reasonable expectations of plaintiffs. (See *Bruni, supra,* 160 Cal.App.4th at p. 1293.) Given that both the trial court and this court have concluded that the arbitration provisions, on their face, covered only Title 7 claims, to uphold defendants' interpretation that these provisions in fact included fraud-related claims would undoubtedly "shock the conscience." (See *Bruni,* at pp. 1288–1289.) Finally, the arbitration provisions are unfairly one sided in that defendants, "as the builder and seller of plaintiffs' homes, would have no conceivable reason to institute legal proceedings against a homeowner after escrow closed, but virtually every claim the homeowners might raise against [the builder and seller] would be subject to arbitration." (*Baker, supra,* 159 Cal.App.4th at p. 896.)

In light of the pervasiveness of the unconscionable provisions related to arbitration and the fact that the purported scope of the arbitration provisions exceeded plaintiffs' reasonable expectations, there are no isolated provisions that can be severed and the arbitration provisions as a whole are unenforceable against plaintiffs. (See *Armendariz, supra,* 24 Cal.4th at p. 124 ["If the central purpose of the contract is tainted with illegality, then the contact as a whole cannot be enforced."]; see also *Bruni, supra,* 160 Cal.App.4th at p. 1295; Civ. Code, § 1670.5.)[5]

---

[5] In their reply brief, defendants assert that, if we should find that the arbitration provisions do not govern plaintiffs' claims, the Title 7 Addendum requires that the claims be submitted to judicial reference. First, we will not consider an argument first raised in a reply brief absent a showing why the issue could not have been raised earlier. (See, e.g., *Keiffer v. Bechtel Corp.* (1998) 65 Cal.App.4th 893, 900 [76 Cal.Rptr.2d 827].) Second, just as we have found that the arbitration provisions in the Title 7 Addendum and Title 7 Master Declaration do not apply to plaintiffs' claims, but instead are limited to Title 7-related issues, for the same reasons, we conclude that the judicial reference provisions in those same documents (located together with the arbitration provisions under the headings "Alternative Dispute Resolution Procedures" and "Arbitration of Disputes") are inapplicable to plaintiffs' non-Title 7 claims.

## *DISPOSITION*

The trial court's order denying the motion to compel arbitration is affirmed. Costs on appeal are awarded to plaintiffs.

Haerle, J., and Richman, J., concurred.

---

In addition, given our conclusion that the dispute resolution provisions do not apply to non-Title 7 claims and, further, that the arbitration agreement was unconscionable, we need not address plaintiffs' additional argument that the arbitration agreement was fraudulently procured.